# SUPPLEMENT.

### Opinion of the Justices to the Senate.

In the opinions of the justices rendered under c. 3, art. 2 of the Constitution, a certain proposed statute, entitled "An Act to create the Mutual Savings Guaranty Fund, Inc., for the purpose of protecting deposits in savings banks," and constituting all savings banks and institutions for savings heretofore and hereafter established members of a corporation thereby created for the primary purpose of furnishing, subject to conditions imposed by the directors of such new corporation, loans upon security to member banks when they are temporarily in need of cash or hold investments which cannot readily be liquidated, and requiring each bank to contribute to such new corporation assessments not in excess of three per cent of its deposits, such assessments on the part of any member bank being subject to withdrawal upon its liquidation, if enacted into law, would not impair the constitutional rights of any such bank or of its depositors, as violating the provisions of the Fourteenth Amendment to the Constitution of the United States, the provisions of art 1, § 10, of said Constitution or the provisions of arts. 1, 10, or 11 of the Declaration of Rights of the Constitution of this Commonwealth, or any other relevant provision of either Constitution.

On February 10, 1932, the Senate adopted the following order:

Whereas, There is pending before the General Court a bill [H. 1136] designed to alleviate existing unsettled financial conditions, entitled "An Act to create the Mutual Savings Guaranty Fund, Inc., for the Purpose of Protecting Deposits in Savings Banks", and constituting all savings banks and institutions for savings heretofore and hereafter established members of a corporation thereby created for the primary purpose of furnishing, subject to conditions imposed by the directors of such new corporation, loans upon security to member banks when they are temporarily in need of cash or hold investments which cannot readily be liquidated and requiring each bank to contribute to such new corporation assessments to a specified percentage of its deposits, such assessments on the part of any member bank being subject to withdrawal upon its liquidation, said bill being printed

as House document number eleven hundred and thirty-six, a copy of which is hereto annexed; and

WHEREAS, The Senate is of the opinion that further consideration of the issues involved should be deferred until certain grave constitutional questions arising therein are disposed of; therefore be it

ORDERED, That the Senate require the opinions of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law: —

1. Would said bill, if enacted into law, impair the constitutional rights of any such bank or of its depositors, as violating (a) the provisions of the fourteenth amendment of the Constitution of the United States forbidding a State to deprive any person of liberty or property without due process of law; (b) the provisions of section ten of Article I of said Constitution forbidding a State to pass any law impairing the obligation of a contract; or (c) any other relevant provision of the Constitution of the United States or of the Commonwealth?

2. If said bill as drawn is found to be open to constitutional objection, would such objection be removed if the operation of the bill should be limited to a fixed period of time having reasonable relation to the duration of the existing emergency?

The order was transmitted to the Justices on February 12, 1932, and, on February 16, 1932, they sent the following answers:

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions of an order adopted February 10, 1932, and transmitted to them on February 12, 1932, a copy whereof is hereto annexed.

The questions relate to a pending bill entitled "An Act to create the Mutual Savings Guaranty Fund, Inc., for the Purpose of Protecting Deposits in Savings Banks." The corporation named in the title is established by the bill.

It is composed of all the savings banks in the Commonwealth. Those banks are compelled to be members of the corporation and are given no option in this respect. The purpose of the corporation is "to assist such member banks, when they are temporarily in need of cash or hold investments which cannot readily be liquidated, by making loans to them or any of them secured by mortgages or other securities legally held by such member banks." The financial resources of the corporation are to be obtained by assessments made by its directors from time to time proportionately upon the member banks requiring each to deposit in cash a total of not more than three per cent of its deposits. These assessments, after being paid to the corporation, are subject to withdrawal only by approval of the directors on specified conditions of fairness and proportion to all the member banks, except that a member bank in liquidation may withdraw its deposited assessment without any distribution being made to others. There are regulations as to elections of directors, rights to member banks to vote based on amount of deposits, adoption of by-laws for the conduct of the business, payment of the assessments made on the member banks and penalties for failure to make such payments, investment of funds of the corporation, its right to borrow money, semiannual reports of its condition to member banks, and powers of the bank commissioner.

The bill does not purport to guarantee the payment of depositors in the member banks or of their creditors. The force and effect of the bill are not to take surplus profits earned by one savings bank or by prosperous savings banks and distribute them among necessitous banks. The corporation is a banking institution. It is to be managed according to sound banking judgment, and recognized principles of banking. It is not a charity empowered to dispense donations. Its design is simply to afford to member banks temporary aid when in need by making loans to them to the extent that such needy banks are able to secure payment of such loans by deposit of sufficient collateral made up of investments legally permissible to savings

banks. Its aim is not to furnish protection against the consequences of bad management of the member banks, but to enable such banks of sufficient resources, but lacking in cash or liquid assets, to endure some special financial strain due, for example, to a run or a threatened run or other transitory trouble. The recital in the order requiring our opinion to the effect that the design of the bill is "to alleviate existing unsettled financial conditions" indicates the scope of the aid intended to be afforded, as disclosed by examination of the details of the bill, except that it is not limited as to time.

The assessments on the member banks required to be paid to the corporation constitute a form of investment of a comparatively small part of their assets. They are not gifts, and are not in the nature of an expense to the member banks. Nonnegotiable certificates of deposit are issued therefor which are not subject to attachment or assignment. Such certificates will constitute a part of the assets of the member banks. The assessments thus collected are to be invested by the corporation in designated classes of securities commonly regarded as of indubitable permanency and steadiness in value. The corporation is empowered to pay dividends on such certificates of deposit as observance of sound banking principles may permit.

The member banks are given no absolute assurance of assistance from the corporation in time of need. They have, however, the reliance that rests upon the declared purpose of the bill that the corporation, if practicable in accordance with sound banking, shall render such assistance. They gain, also, the added strength that may flow from that declared purpose, and the greater public confidence that may arise from connection with the resources of the corporation. While these factors may be more or less intangible, they may be regarded by the General Court as real and substantial, and in the interests of the member banks, and thus promoting the general welfare. The management of the corporation is vested in officers and a board of directors all of whom must be chosen by member banks and must first have qualified as corporators or officers of a

savings bank. Their every incentive would be to protect both the interests of the depositors in savings banks and the prosperity of the member banks. The reversionary interest in the property of the corporation in case of its dissolution would remain in the member banks in proportion to the amount of assessments paid in.

The bill is manifestly designed to be an exercise of the police power. That power may rightly be exerted within rational limits to regulate and protect the safety of banking. In the exercise of that power the nature of securities in which investments may be made by banks may be restricted to classes deemed to be comparatively safe and devoid of speculative features. The freedom of contract on the part of savings banks may be limited in reasonable ways to accomplish the same result. Measures may be enacted to secure some degree of coöperation between banks to the end that general solvency and financial strength may be promoted, particularly in times of panic and general depression. State supervision of the business of banking has become familiar and rests upon the same footing.

The relations between savings banks and their depositors, so far as contractual in nature, have been entered into subject to future proper exercise of the police power by the enactment of wholesome and reasonable laws for the common good. Laws of that character do not impair the obligations of such contracts. Depositors of savings banks cannot be despoiled under the guise of police regulations. If a very large percentage of the deposits of the member banks was required to be paid over in way of assessment for the benefit of the corporation, different questions would be presented which need not now be considered. And if the bill should be passed and in its practical operation should become hereafter arbitrary or confiscatory in operation, its validity, even though once established, would be open to future inquiry and investigation in the light of changed economic or banking conditions. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 342, 343.

There are now doing business within the Commonwealth four savings banks incorporated before the enactment of

St. 1830, c. 81, approved on March 11, 1831, now embodied in G. L. c. 155, § 3 (see art. 59 of the Amendments to the Constitution), whereby there is reserved the power of amendment of charters of corporations, whose charters contain no express provision subjecting them to the control of the Legislature. (The Provident Institution for Savings in the Town of Boston, St. 1816, c. 92. The Institution for Savings, in the Town of Salem and its vicinity,* St. 1817, c. 64. Institution for Savings, in Newburyport, and its vicinity, St. 1819, c. 210. Institution for Savings in Roxbury and its vicinity, St. 1824, c. 95. The charters of other savings banks incorporated before 1831 contain some reservation of power to the Legislature.) This circumstance prevents the enactment of legislation transgressing or infringing the rights secured to them by their acts of incorporation. But it does not protect them against the valid exercise of the police power. Since we are of opinion that the bill here in question is manifestly intended to be an exercise of the police power, if it is valid in general on that ground, it will not be rendered invalid because operative upon the four savings banks chartered before 1830. *Opinion of the Justices*, 9 Cush. 604.

We are of opinion that the constitutionality of the bill against attack as violative of the Fourteenth Amendment to the Constitution of the United States in the particulars mentioned in the order, and of § 10 of art. 1 of that Constitution as impairing the obligation of contracts is fully sustained by *Noble State Bank* v. *Haskell*, 219 U. S. 104; *S. C.* 219 U. S. 575, and *Abie State Bank* v. *Bryan*, 282 U. S. 765. Those decisions are binding upon us as interpretations of the Federal Constitution. Therein State statutes of a much more drastic character than the bill here being considered were upheld. In view of those authoritative adjudications, further amplification of the pertinent principles by us so far as concern that Constitution would be superfluous.

No reference is made in the order to any specific provision of the Constitution of this Commonwealth as the basis for our opinion. Answering therefore on a general

---

*By St. 1843, c. 6, the name of this institution was changed to "Salem Savings Bank."

view only we are of opinion that the bill does not violate arts. 1, 10, 11 of the Declaration of Rights of our Constitution, those appearing to be its relevant provisions. The present bill cannot in our opinion be rightly said to be an unreasonable exercise of the police power. Its provisions are upheld in principle by the following authorities: *Commonwealth* v. *Farmers & Mechanics Bank*, 21 Pick. 542, *Opinion of the Justices*, 9 Cush. 604, *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95, 111, 112.

We answer "No" to the first question.

It is unnecessary to answer the second question in view of our answer to the first question.

> ARTHUR P. RUGG.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> WILLIAM CUSHING WAIT.
> GEORGE A. SANDERSON.
> FRED T. FIELD.