LOWELL CO-OPERATIVE BANK & others *vs.* THE CO-OPERATIVE CENTRAL BANK & others.

Suffolk.   April 5, 6, May 22, 1934. — June 30, 1934.

Present: CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*The Co-operative Central Bank.   Coöperative Bank.   Bank and Banking. Constitutional Law,* Equal protection of the law, Police power, Separation of departments of government.

All rational presumptions are to be made in favor of the validity of every enactment of the General Court.

In considering the validity of an enactment of the General Court, the courts are concerned only with the power of the General Court to make the enactment; the expediency thereof and the policy upon which it is based are matters solely within the discretion of the General Court.

Coöperative banks are "banks" within the ordinary meaning of that word, and as such are subject, like other banks, to proper control by the Commonwealth.

St. 1934, c. 73, directing The Co-operative Central Bank to establish a fund for the insurance of shares in coöperative banks and for that purpose empowering it to levy certain assessments on member coöperative banks, does not deny to certain member banks the equal protection of the law by reason of the circumstances that it applies equally to all coöperative banks irrespective of their financial condition and that at the time of its enactment and thereafter certain other member banks were operating under restrictions imposed by the commissioner of banks under St. 1933, c. 59, § 2; or by reason of the circumstance that, shortly after the enactment of said c. 73 and under its powers, The Co-operative Central Bank took possession of a certain coöperative bank upon certificate from the commissioner of banks and with intent to use the insurance fund for the benefit of that bank and its shareholders.

Said c. 73 does not violate art. 30 of the Declaration of Rights in that it makes no provision for a judicial review of the action of the commissioner of banks in certifying to The Co-operative Central Bank that it shall take over the control of a member bank.

Said c. 73 is not an arbitrary, confiscatory, nor unreasonable exercise of
the police power, and is not in violation of the Fourteenth Amendment
to the Constitution of the United States or of any other provision
thereof, or of any provision of the Constitution of this Commonwealth.

BILL IN EQUITY, filed in the Supreme Judicial Court for the
county of Suffolk on March 10, 1934, described in the opinion.

The defendants demurred. The demurrers were heard by
*Field*, J., by whose order an interlocutory decree sus-
taining them was entered. The single justice thereupon
reported the questions raised by the demurrers for de-
termination by the full court.

The plaintiffs presented to the full court a motion to
amend the bill by adding to paragraph 5 the following:
"And the . . . [plaintiffs] say that said . . . [St. 1934,
c. 73] was approved by the Governor on March 6, 1934;
and the . . . [plaintiffs] further say that they are in-
formed and believe and therefore aver that since March 15,
1934, when this case was reported by the single justice for
determination by this court, to wit, on March 26, 1934,
the . . . [defendant] Arthur Guy, acting in his capacity
as bank commissioner under section four of said statute,
certified to the . . . [defendant] The Co-operative Cen-
tral Bank that it appeared to him that the Shawmut Co-
operative Bank was in an unsound or unsafe condition to
transact the business for which it was organized and that
it was unsafe and inexpedient for it to continue to transact
said business; and that the . . . [defendant] The Co-
operative Central Bank on the same day took possession
and control of the property and business of said Shawmut
Co-operative Bank; and the . . . [plaintiffs] are informed
and believe and therefore aver that the . . . [defendant]
The Co-operative Central Bank intends to use the Share
Insurance Fund heretofore mentioned for the benefit of
said Shawmut Co-operative Bank and for the benefit of
the shareholders thereof as provided in said statute; and
the . . . [plaintiffs] say that the Shawmut Co-operative
Bank was a coöperative bank duly organized and doing
business under G. L. c. 170, on said March 6, 1934, and the
. . . [plaintiffs] say that they are informed and believe
and therefore aver that the condition of said Shawmut

Co-operative Bank was substantially the same on said March 6, 1934, that it was on said March 26, 1934."

*F. M. Qua*, for the plaintiffs.

*P. A. Hendrick*, (*A. S. Gerstein* with him,) for The Co-operative Central Bank and others.

*C. F. Lovejoy*, Assistant Attorney General, for the Commissioner of Banks.

CROSBY, J.    This bill in equity is brought by eight coöperative banks, established and doing business in this Commonwealth under G. L. c. 170, against The Co-operative Central Bank, organized and doing business under St. 1932, c. 45, its officers and directors, and the commissioner of banks.    The plaintiffs seek to enjoin and restrain the defendants from making assessments, and from taking any measures to enforce the collection of assessments for the establishment of a fund for the insurance of shares in coöperative banks in accordance with the provisions of St. 1934, c. 73, on the ground that the statute violates both the Constitution of the United States and the Constitution of this Commonwealth.    The case is reported by a single justice of this court after the entry of an interlocutory decree sustaining two demurrers to the bill, one filed by the commissioner of banks, and the other by all the other defendants.

The statute in question was approved by the Governor on March 9, 1934, as an emergency measure.    Its provisions are in part as follows: The Co-operative Central Bank is directed to establish a fund for the insurance of shares in coöperative banks.    For that purpose the directors of the corporation may by assessments made from time to time require each member bank to pay in cash to the corporation a total of not more than one per cent of the share liabilities of such member bank as shown by the last annual report to the commissioner of banks.    These assessments are in addition to other payments to be made to the corporation under St. 1932, c. 45.    The other payments required under c. 45 are as follows: Each member bank is required to have as a reserve fund an amount equal to at least three per cent of its total resources.    Section 47 of c. 170 of the General

Laws which was substituted for the former chapter of that number by St. 1933, c. 144. Under St. 1932, c. 45, the directors of the corporation may require each member bank to deposit with the corporation not over seventy-five per cent of such reserve. The first assessment of one quarter of one per cent of the share liability is to be paid by each member bank from the proceeds of its deposit with the corporation under St. 1932, c. 45, § 6, so far as said deposit may be adequate. Other assessments, not exceeding in all one per cent of the share liabilities, shall be made at the direction of the commissioner. Such assessments shall be held as a fund to be known as the "Share Insurance Fund." Said fund shall be invested separately from the other funds of the corporation and shall not be liable for its obligations other than those created by or under the act. The corporation may pay dividends to member banks upon the amounts paid in by them to the share insurance fund, or upon the unexpended portion thereof, at such rate and at such times as the directors of the corporation may determine. The corporation may by vote of its directors borrow money for the purposes of the share insurance fund and pledge any assets in which such fund is invested as security for such loans. In case of the voluntary liquidation of any member bank under G. L. (Ter. Ed.) c. 167, § 22, the corporation shall return the unexpended portion, as determined by its directors, of all assessments paid by such bank into said fund; provided that such directors are satisfied that such bank has paid or will pay its shareholders in full. In case of the consolidation or merger of two or more banks under the provisions of § 50 of said c. 170, as so appearing, the unexpended portion of the assessments paid by such banks into said fund shall be readjusted on the basis of the assessment liability of the continuing bank and the excess, if any, shall be repaid to it. When the commissioner finds that a member bank is in an unsound or unsafe condition, or that it is unsafe or inexpedient for it to continue to transact business, he may so certify to the corporation, and upon receipt of such certificate the corporation shall, by notice in writing to the

commissioner and to the bank, take possession and control of the property and business and operate such bank subject to such rules and regulations as the commissioner may impose, until the bank shall resume business or until its affairs are liquidated. The corporation, while so in control, may pay to such bank out of the share insurance fund such sums as the corporation's directors deem necessary for the protection of the bank's shareholders, and may order the same to be repaid when no longer required for that purpose. The fund will be used in the event of final liquidation of a member bank if the assets of the bank are insufficient to pay its shareholders in full.

At any time after control of a member bank has been taken over by the corporation it may, with the approval of the commissioner, be turned back to such member bank, which may resume business free from any control of the central bank. But the corporation shall not turn back such control and operation until there have been repaid into the share insurance fund all sums advanced by it, or until it has received security for such repayment satisfactory to the directors of the central bank. St. 1934, c. 73, by incorporating by reference G. L. (Ter. Ed.) c. 167, § 5, as amended by St. 1933, c. 337, provides that if a member bank fails to pay its assessment to the share insurance fund, the commissioner of banks shall, after notice to the bank, certify a violation of law to a board composed of the State Treasurer, the Attorney General, and the commissioner of corporations and taxation, which board may, after hearing, order removed the officers responsible for the delinquency. Such order is not to be made public and is subject to review by this court. The act further provides that the corporation with the approval of the commissioner may, and at his request shall, at any time after it has taken over the control of any member bank under § 4 of said c. 73, proceed to liquidate its affairs; that in such event the corporation shall pay the shareholders of such bank the full amount of their shares at the date of discontinuance of the business of the bank, with interest from the last dividend date to the date of discontinuance at such rate, not exceeding three per cent per annum, as the direc-

tors shall determine, the payments to be made within five years from discontinuance and at such times and in such instalments as the directors with the approval of the commissioner shall determine. For such purpose the corporation shall use, in addition to the assets of the bank, such sums as may be required from the share insurance fund. Certain other provisions of the act provide for the liquidation of the bank. For the purpose of carrying out the provisions of the act the corporation may exercise all the powers, rights and franchises of any bank, the control and operation of which have been taken over by it under the act. Upon the enactment of legislation by the General Court authorizing coöperative banks to join in any Federal plan of guaranty of shares, the corporation may, by a vote of four fifths of all the members of the corporation, dissolve the fund prior to the termination of the life of the corporation as provided in § 1 of c. 45; and if it be so voted to dissolve, the corporation shall proceed to liquidate the share insurance fund and to distribute the proceeds to the member banks.

The bill alleges that the directors of The Co-operative Central Bank are about to make an assessment on member banks, and if the plaintiffs refuse to pay it, the commissioner will institute proceedings for the removal of their officers and directors under and by virtue of G. L. (Ter. Ed.) c. 167, § 5, and that the confidence of the plaintiffs' shareholders will be so impaired that a serious and possibly irreparable injury will be caused the plaintiffs.

The constitutional questions raised relate to art. 1, § 10, of, and to the Fourteenth Amendment to, the Federal Constitution, and to arts. 1, 10, 11, 12, 15 and 30 of the Declaration of Rights of the Constitution of this Commonwealth.

All rational presumptions are made in favor of the validity of every legislative enactment. *Perkins* v. *Westwood*, 226 Mass. 268, 271, and cases cited. *Commonwealth* v. *Leach*, 246 Mass. 464. This court is concerned only with the power of the Legislature to enact laws, the question of their expediency or the policy behind them being matters purely within the legislative discretion. *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389, 413. It was

said by Mr. Justice Hughes in *Chicago, Burlington & Quincy Railroad* v. *McGuire*, 219 U. S. 549, at page 569: "The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." If the statute in question is to be upheld, it must be on the ground that it is a legitimate exercise of the police power of the States. That term, although frequently used, and often made the basis of important and far reaching decisions, is impossible of exact definition. It was defined by Chief Justice Shaw in *Commonwealth* v. *Alger*, 7 Cush. 53, at page 85, to be "the power vested in the legislature by the constitution, to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same."

It is the contention of the plaintiffs that the statute here under consideration is an improper exercise of the police power in that it is arbitrary and confiscatory, that it is unreasonable and not calculated to promote the objects for which it was enacted, and that it is in violation of the equal protection of the laws guaranteed by the Federal Constitution. At the outset it is argued by the plaintiffs that coöperative banks are not banks at all in the true sense of the term, and are not subject to regulation to the same extent as are savings and commercial banks. It is true that coöperative banks do not have depositors in the usual sense. All those who place money in coöperative banks are shareholders who have a voice in the management of the bank, and, in effect, own the

corporation. A shareholder's right to withdraw his shares is limited and loans are made by the bank only to shareholders. On the other hand, coöperative banks have received both legislative and judicial recognition as being in the same class with other banks. Coöperative banks are within the banking laws of the State and under the supervision of the commissioner of banks. G. L. (Ter. Ed.) c. 167; and the said c. 170, substituted by St. 1933, c. 144, for the former chapter of that number. It was held in *Atwood* v. *Dumas*, 149 Mass. 167, that the money paid in on shares to a coöperative bank was subject to trustee process and various particulars were there pointed out in which such banks resemble savings banks. A coöperative bank is included in the term "bank" where that word is used in the chapter on banks and banking, G. L. (Ter. Ed.) c. 167. See *Olson* v. *Sissenwine*, 259 Mass. 79. In *Opinion of the Justices*, 278 Mass. 613, the justices of this court rendered to the Senate their opinion as to the constitutionality of a proposed statute (St. 1932, c. 45) which created The Co-operative Central Bank. In that opinion at page 616 it was said: "The design and scope of this bill in respect to its main purpose and the means provided for the accomplishment of that purpose are not dissimilar to those of House bill No. 1136. There are in our opinion no differences between the two bills so far as concern the applicable constitutional principles in the particulars specified in the orders. The reasons set forth in our opinion of even date herewith touching bill No. 1136 lead us to the same conclusion respecting the present bill." House bill No. 1136 created the Mutual Savings Guaranty Fund, Inc., for the purpose of protecting deposits in savings banks, and in general corresponded to the Co-operative Central Bank bill. Although in giving opinions to the Legislature the justices act in a purely advisory capacity, and such opinions are open to reconsideration and revision, they "presuppose" that the subjects to which they relate have been "judicially examined and considered." *Perkins* v. *Westwood*, 226 Mass. 268, 271, 272. It is plain that the court considered coöperative banks to be in the same class as sav-

ings banks for the purpose of the proposed legal action.   In *Opinion of the Justices,* 9 Cush. 604, an opinion was rendered on the question whether a savings bank chartered in 1816 was subject to the general laws of the Commonwealth passed since the granting of the charter.   In stating the reasons why the bank should be so subject, language was used which would seem to be applicable to coöperative banks.   It was said at page 609:   "To provide for the safety and well being of institutions for savings, is surely a most appropriate exercise of the superintending power of the legislature.   These institutions are established wholly for public purposes, are intrusted with large amounts of money belonging to persons who can ill afford to lose it, and who are in no condition to be able to judge of, or provide for, its security. . . . The usefulness of the Institutions of Savings must depend on their possessing the public confidence, and the public confidence must very much depend upon their being under the wholesome inspection and control of the government."   It is a matter of common knowledge that coöperative banks are largely dealt with by persons of small or moderate means as a method of accumulating savings.   Although they may not be public to the same extent as savings banks, in that the depositors are members of the corporation and loans are made only to shareholders except of surplus funds (G. L. [Ter. Ed.] c. 170, §§ 6, 7, 21, 23), they invite the public to become shareholders and deposit their monthly instalments on their shares in the bank.   It is plain that, both on principle and authority, coöperative banks are "banks" as that word is ordinarily defined, and understood, and that no special characteristics distinguish them from other banks in respect to the legislation in question.

The Supreme Court of the United States in certain cases has dealt with legislation similar to St. 1934, c. 73.   In *Noble State Bank* v. *Haskell,* 219 U. S. 104; *S. C.* 219 U. S. 575, 580, the court passed upon the constitutionality of an Oklahoma statute which subjected State banks to assessments for a depositors' guaranty fund.   The fund was to be created by assessments upon all State banks and

used to pay in full depositors of any insolvent bank. It was held that the statute was within the police power of the State, and did not deprive banks assessed of their property without due process of law or deny to them equal protection of the law, nor did it impair the obligation of the charter contracts. See also *Engel* v. *O'Malley*, 219 U. S. 128. Two other cases with almost identical facts follow the decision in *Noble State Bank* v. *Haskell, supra.* See *Shallenberger* v. *First State Bank of Holstein*, 219 U. S. 114; *Assaria State Bank* v. *Dolley*, 219 U. S. 121. The Nebraska guaranty fund statute previously upheld in *Shallenberger* v. *First State Bank of Holstein, supra,* was again considered, in the light of changed conditions and certain modifications, in *Abie State Bank* v. *Bryan*, 282 U. S. 765, and was again upheld. It was there said at page 784 by Mr. Chief Justice Hughes speaking for the court: "Considering the reduction in the extent of the obligation as to future assessments, we are unable to say that the statute in this modified form is confiscatory, or other than a reasonable method of liquidating the guaranty plan. In this view, the judgment of the Supreme Court of the State denying an injunction should be affirmed." The decisions of the Supreme Court of the United States above cited hold that the statutes there considered are not violations of the Fourteenth Amendment to the Constitution of the United States, or of § 10 of art. 1 of the Federal Constitution as impairing the obligation of contracts. Those decisions are binding on this court as interpretations of the Federal Constitution. *Opinion of the Justices*, 278 Mass. 607, 612.

It is manifest that reasons for the protection of the public welfare are at least as great for the exercise of the police power in the case at bar as in those cases decided by the Supreme Court of the United States above referred to. If the statute here involved be considered as a greater exercise of the police power than was considered in *Opinion of the Justices* in 278 Mass. 607 and 278 Mass. 613, we are of opinion that it is not arbitrary nor confiscatory, and is not a violation of the Federal Constitution.

It is alleged in the fifth paragraph of the bill that when the statute in question was enacted, and at the present time, certain restrictions imposed by the commissioner of banks under and by virtue of St. 1933, c. 59, § 2, upon certain member banks were and are in effect. It is argued that because St. 1934, c. 73, applies equally to all coöperative banks, irrespective of financial condition, the plaintiffs are denied the "equal protection of the laws." It is manifest that this argument cannot prevail. It is beyond the realm of possibility that all coöperative banks should have been in precisely the same financial condition at the moment the statute became effective. It is doubtless true that some of them were stronger financially than others. The allegation that some were operating under restrictions was admitted for the purposes of the case by the demurrers, but that does not necessarily mean that they were insolvent or in danger of becoming insolvent and unable to pay their shareholders in full. The fact that their activities were restricted may well have made them better "insurable risks" than some other banks not so restricted. No denial of the equal protection of the laws for this reason has been shown.

The allegations in the amendment to the bill which is allowed, if proved, would not affect the constitutionality of the statute for the reasons hereinbefore stated.

The plaintiffs further contend that St. 1934, c. 73, is not a valid exercise of the police power because it is unreasonable and not calculated to accomplish the ostensible object of its enactment. It cannot be held on any sound ground that the statute is not reasonably calculated to achieve its purpose. It is argued by the plaintiffs that such an insurance plan will tend to lessen the caution of the management of member banks, and that they will be tempted to make faster and larger profits at the expense of security of investments. The same argument applies to St. 1932, c. 45, which established The Co-operative Central Bank. The same argument likewise applies to the workmen's compensation act. This court cannot hold on any sound ground that such a result would follow, as argued

by the plaintiffs, or that the manifest purpose of the act would not be accomplished.

The final contention of the plaintiffs is that the statute is in violation of art. 30 of the Declaration of Rights, which provides for a separation of the three departments of government, in that it makes no provision for a judicial review of the action of the commissioner of banks in certifying to The Co-operative Central Bank that it shall take over the control of a member bank. A similar question was discussed in *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95. The statute there considered was G. L. c. 167, § 22, authorizing the commissioner of banks to close a bank and take possession of all its assets and business whenever it appeared to him to be necessary for any one of several enumerated reasons. It was contended in that case that the statute gave to the commissioner judicial functions. It was pointed out by the court in that case that G. L. c. 167, § 33, provided for a judicial review of the action of the commissioner, and that the two sections must be considered together; that the two provisions of the statute are complementary one of the other, and that the powers conferred upon the commissioner of banks are not judicial but purely administrative; that the power of inquiry into the condition of a bank with a view to determining the existence of contingencies, upon which the continuance in business of a bank is made to depend, may by law validly be reserved by the Legislature to itself or to administrative officers appointed under its authority; that such an inquiry is not a judicial act. Several decisions of the Supreme Court of the United States are cited to the effect that inquiry into facts may be devolved upon subordinate executive or administrative officers, and that findings or decisions reached by such officers may be made conclusive without conferring judicial power or violating any guaranty secured by the Federal Constitution. *Oceanic Steam Navigation Co.* v. *Stranahan*, 214 U. S. 320. *United States* v. *Hitchcock*, 205 U. S. 80. *Zakonaite* v. *Wolf*, 226 U. S. 272, 275. *Selective Draft Law Cases*, 245 U. S. 366, 389. It is stated that no intimation is made whether these cases would have been correctly decided under the

Constitution of the Commonwealth. It was further stated in *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, at page 115, that "These decisions of the Federal Supreme Court are strongly persuasive as to the constitutionality of the act here attacked." There is no provision in the Federal Constitution precisely like art. 30 of the Declaration of Rights in our Constitution. "In substance and effect, however, the Federal Constitution as it has been interpreted does not differ materially from that article." See *Kilbourn* v. *Thompson,* 103 U. S. 168, 190, 191; *Ocampo* v. *United States,* 234 U. S. 91, 99–101. The case of *Bushnell* v. *Leland,* 164 U. S. 684, is apposite. By Federal statute a comptroller of the currency was authorized to take possession of the assets of a national bank for certain specified reasons. It was contended that under the national banking law the comptroller was without power to appoint a receiver to a defaulting or insolvent national bank, or to call for a ratable assessment upon the stockholders, without a previous judicial ascertainment of the necessity for the appointment of the receiver, and of the existence of liabilities of the bank, and that the lodgment of authority in the comptroller, empowering him either to appoint a receiver or to make a ratable call upon the stockholders, was tantamount to vesting that officer with judicial power in violation of the Constitution. It was held by the Supreme Court, however, that the question whether the comptroller was vested with judicial power in violation of the Constitution had been long since settled in favor of the validity of the statutes, citing *Kennedy* v. *Gibson,* 8 Wall. 498, *Casey* v. *Galli,* 94 U. S. 673, *United States* v. *Knox,* 102 U. S. 422. The case was followed in *In re Chetwood,* 165 U. S. 443, 458.

No case has been decided by this court on the question here presented upon comparable facts. However, in *Opinion of the Justices,* 261 Mass. 556, in discussing a proposed statute making the report of commissioners appointed by this court final and conclusive with regard to the determination of the area receiving special benefit from certain improvements, it was said at page 607: "The requirement of § 6 of the proposed bill that the report of the commissioners

when accepted and confirmed by the court shall be final and conclusive presents no constitutional barrier. The court will determine for itself whether the report is extravagant or unreasonable or based upon any error of law and would reject it for such cause. But the court will not revise the judgment of the commissioners or substitute its view of expediency for those of the commissioners. *Weymouth, petitioner,* 251 Mass. 359, 361. The circumstance that the landowner is given no right to trial by jury as to the betterment does not render the proposed bill unconstitutional. *Chapin* v. *Worcester,* 124 Mass. 464, 468."

It is manifest that the commissioner of banks is not exercising a judicial function in determining the fitness of a bank to continue business under its own management, and that the questions for his determination are those of fact. It will be presumed that he must exercise his best judgment in the matter, and will not arbitrarily certify banks to be taken over by The Co-operative Central Bank.

It results that St. 1934, c. 73, is not invalid because contrary to any provision of the Constitution of the United States or the Constitution of this Commonwealth.

What has been said disposes of all the questions argued in behalf of the plaintiffs.

*Demurrers sustained.*