MASSACHUSETTS CO-OPERATIVE BANK LEAGUE *vs.* BOARD OF BANK INCORPORATION.

Suffolk.  November 4, 1964. — December 1, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Bank and Banking. Coöperative Bank. Federal Savings and Loan Association. Equity Jurisdiction,* Review of decision of board of bank incorporation.

A review by this court under G. L. c. 170, § 49, of a decision by the Board of Bank Incorporation in an adjudicatory proceeding on an application by a coöperative bank for the board's approval of the applicant's conversion to a Federal savings and loan association under § 49 is governed by the standards of review set forth in c. 30A, § 14 (8).

[136]

Upon an application by a coöperative bank for approval by the Board of Bank Incorporation under G. L. c. 170, § 49, of the applicant's conversion to a Federal savings and loan association, the burden is on the applicant to show by substantial evidence that "public convenience and advantage will be promoted by" such conversion.   [137]

A conclusion by the Board of Bank Incorporation that the "public convenience and advantage . . . [would] be promoted by" the conversion of a certain small coöperative bank, the only coöperative bank and one of "seven savings institutions" in a large city, into a Federal savings and loan association under G. L. c. 170, § 49, was warranted by the board's subsidiary findings, supported by substantial evidence, respecting various disadvantages encountered by the bank because Massachusetts statutory limitations prevented it from providing facilities and services sought by the public in that city and available from competing institutions, and respecting the improved and more varied banking services the bank could offer under "a federal charter," and that the conversion would not adversely affect the coöperative banking system.   [138–139]

Section 49 of G. L. c. 170 clearly indicates that a coöperative bank, by conversion to a Federal savings and loan association, may free itself from the restrictions on coöperative banks imposed by c. 170 if the public convenience and advantage will thereby be promoted.   [139–140]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on February 28, 1964.

The case was reserved and reported by *Cutter, J.*, without decision.

*Frederick D. Bonner* (*John J. McCarthy* with him) for the petitioner.

*Matthew R. McCann*, for the intervener, Home Co-operative Bank.

*David W. Hays*, Assistant Attorney General, for the respondent.

CUTTER, J.   On June 3, 1963, Home Co-operative Bank (Home) of Worcester filed an application seeking the board's approval of its conversion under G. L. c. 170, § 49 (as amended through St. 1956, c. 246),[1] into a Federal savings and loan association.   The Massachusetts Co-opera-

---

[1] Section 49, as amended, reads, so far as pertinent, "Any such corporation may convert itself into a federal savings and loan association . . . subject to the following conditions: — (1) Such corporation shall give notice to the board of bank incorporation of its intention to so convert and shall apply to said board for its approval of such conversion, and *if the board determines that public convenience and advantage will be promoted by such conversion,* the board shall grant such approval which shall be deemed revoked if such corporation does not consummate such conversion within one year after the

136 348 Mass. 134

Massachusetts Co-operative Bank League v. Board of Bank Incorporation.

tive Bank League (the league) was "admitted . . . as a party to the proceeding" before the board. The board, in a majority decision, approved the application. The league then filed in the county court a petition for review of the board's decision. Home was permitted to intervene. A single justice, without decision, reserved the case for the full court upon the pleadings and transcript and exhibits before the board.

1. This review of the board's decision takes place under G. L. c. 170, § 49 (see fn. 1), in accordance with standards of review set out in G. L. c. 30A, § 14 (8). See *Chicopee Co-op. Bank* v. *Board of Bank Incorporation,* 347 Mass. 744, 745. The league contends (a) that the board committed error of law by applying incorrectly the standard (see § 49, fn. 1) of "public convenience and advantage," and (b) that the board's decision was not supported by substantial evidence.

2. The *Chicopee Co-op. Bank* decision does not directly govern the present case. That decision (see 347 Mass. at p. 754), upon somewhat unusual facts, was that "the board's approval of the [Chicopee Falls Co-operative Bank's] application to convert . . . [was] in fact an approval" of that bank's merger, at once after conversion, with another Federal savings and loan association.[2] We held (at p. 754) that this virtual approval of a merger was "in excess of the board's authority," noting, however, that "[t]he board's

date of such approval. . . . [Then after provisions for notice by publication of a public hearing, the section proceeds] If said board refuses to approve such conversion, no further proceedings shall be had, but the application may be renewed after one year from the date of the refusal . . . . However, upon the grant of or refusal to grant such approval by the board, *the supreme judicial court, upon application of a person aggrieved thereby, shall have jurisdiction to review and to confirm or modify the action of the board . . .*" (emphasis supplied). Statute 1964, c. 386, approved May 13, 1964 (with an emergency preamble), reads, "The privilege of conversion . . . [see G. L. c. 170, § 49] shall not be exercised by any co-operative bank *during the period of two years immediately following the effective date of this act,* except one which prior to . . . [January 1, 1964] filed with the board of bank incorporation an application for approval of its conversion into a federal savings and loan association." This last provision exempts Home from the 1964 statute, because Home's application was filed in 1963.

[2] This other association had its headquarters in Berkshire County and already had one branch in Hampden County (see 347 Mass. at pp. 746–747), so the problem of bank branches in more than one county was indirectly raised.

power to approve a true conversion is not curtailed by . . . [the *Chicopee Co-op. Bank*] decision.'' The present case involves no problems of merger in the guise of conversion.

In the course of the *Chicopee Co-op. Bank* case, the court discussed (at pp. 752–753) the standard of approval set out in § 49, viz. that ''public convenience and advantage will be promoted.'' We said that consideration must be given (a) ''to the convenience and advantage of a particular bank and its shareholders,'' (b) to the people in the ''community who do business with it,'' and (c) to the effect of the proposed conversion ''upon the banking system as a whole and upon the public . . . .'' The burden is upon the applicant to show that the standard has been satisfied and that the conversion will promote the public interest.

3. The board in its decision found that Home ''is the only state-chartered co-operative bank in Worcester,'' which is ''also served by one federal . . . association, five mutual savings banks, and five commercial banks.'' Home's 1962 assets (roughly $7,000,000)[3] ''amounted to less than one per cent of the total deposits of $734,000,000 in the seven savings institutions'' just mentioned. The board referred to various disadvantages encountered by the bank because of limitations upon it by its ''co-operative charter'' (see G. L. c. 170) which prevented it from providing facilities and services sought by the public and available in other banking systems. Mentioned by the board was Home's inability (a) to offer attractive savings plans; (b) to take ''deposits in substantial amounts'' which other types of banks could take; (c) to ''keep pace with . . . demands . . . for mortgage loans''[4] because ''as a co-operative bank

---

[3] There was evidence that there were 168 coöperative banks and that the savings deposits of all coöperative banks in Massachusetts (as of September 12, 1963) came to a total of $1,414,000,000. Home's total of monthly savings and profits, paid up certificates, regular savings accounts, and Christmas Club accounts was a little less than $7,000,000 as of January 31, 1963. The board might reasonably have concluded that Home's withdrawal from the coöperative bank system could not have significant effect on that system.

[4] The board found that Home's inability ''to keep pace with the [public] demands'' was not the fault of its management which had kept bank expenses ''equal to or below the statewide average'' and had accomplished ''a steady but unspectacular growth.'' The board observed that the officers and directors were ''substantial citizens . . . active in civic affairs.''

it is basically restricted to single family homes whereas the . . . trend in . . . Worcester has been toward multiple family dwellings'' and because Home's ''borrowing capacity as a co-operative bank is not sufficiently great or elastic''; and (d) to make certain ''special type loans, such as educational loans.'' Reference was made to further limitations upon Home's ability to compete for business with other banking institutions. The board stated that, ''while there is no present prospect that the [b]ank is in [financial] danger, unless it can overcome . . . the disabilities of its charter, its future prospects for normal growth and continued service to the public are not encouraging.''

The board expressed the view (1) that under ''a federal charter'' Home would be able to give improved and more varied banking services, offer ''more convenient savings plans,'' and ''pursue more advantageous dividend policies,'' and (2) that it would ''have greater flexibility in mortgage lending policies . . . [and] strengthen itself through an increased borrowing capacity.'' The board also said that it did ''not consider that the departure of one nine million-dollar bank'' could ''in and of itself either weaken the co-operative banking system . . . or have such an adverse effect'' as to justify disapproval of the application. It concluded ''that public convenience and advantage will be promoted by'' the conversion.

The board's conclusions are based on subsidiary findings, which in turn are supported by substantial evidence. Home's president testified at length concerning Home's financial affairs, the competitive situation among the savings institutions in Worcester, and the difficulties which Home encountered in competing with other types of institutions[5] for deposits and loans, in the light of building practices and the present savings and loan needs of the Worcester community.

---

[5] No Worcester bank opposed the proposed conversion. Letters, in evidence from many of the banks in the community, expressed no disapproval of the conversion. The league offered ''no affirmative testimony'' but did seek postponement of the hearing and presented argument. Because the league was allowed to intervene as a party, it had full opportunity to bring to the board's attention any relevant facts.

The board was warranted in concluding that the conversion would be of advantage to Home and to its customers and to potential borrowers among the general public. The evidence revealed a demand in Worcester for broader services than Home was able to offer. The board could reasonably conclude from the evidence, reflected adequately in its findings, that Home's assets would be employed to greater public advantage, in the circumstances currently prevailing in the Worcester community, if Home should become a Federal savings and loan institution with more flexible powers. It was open to the board to take the view that, although Home was not in danger of financial collapse, the conversion would tend to accelerate its growth and make it stronger, to the general advantage of the banking structure as a whole. There was no evidence of any likely injury to the banking structure (either of all Massachusetts banks or of all coöperative banks in the State) if the application should be granted.

4. The league argues that Home's application for conversion is based (a) upon its desire "to compete in the area of 'big banking'" and (b) upon the limitations imposed on Home, a part of the coöperative banking system established by G. L. c. 170. The league then argues that Home cannot be heard to contend that it should be allowed to convert to a different type of savings institution merely "because legislatively imposed charter provisions do what they are intended to do: preserve the distinctive character of coöperative banking institutions, thereby necessarily fixing the outer limits of . . . the co-operatives' competitive activity."

There is no doubt that the Legislature has provided that coöperatives, while they remain coöperative banks, shall comply with G. L. c. 170 and follow the methods of operation prescribed for such banks. See *Olson* v. *Sissenwine,* 259 Mass. 79, 81–82; *Lowell Co-op. Bank* v. *Co-operative Cent. Bank,* 287 Mass. 338, 346. See also *Warsofsky* v. *Sherman,* 326 Mass. 290, 294. Section 49, however, is a clear statement that the Legislature is willing that this coöp-

erative bank, by conversion to a regulated Federal savings and loan association, free itself from the restrictions of c. 170, if the public convenience will thereby be promoted. The power to approve conversions has been entrusted to the board (subject to judicial review as provided in § 49 and in c. 30A, § 14). Home has merely asked the board to allow it to do what the Legislature has said in § 49 that it may do. Home is not improperly complaining about its charter, for so far as that charter incorporates c. 170, it includes § 49.[6] No error of law has been shown.

5. A decree is to be entered affirming the decision of the board.

*So ordered.*

---

[6] In view of the provisions of § 49, we have no occasion to consider questions such as those discussed (a) in *Opinion of the Justices,* 251 Mass. 569, 612–613, or (b) in *Hopkins Fed. Sav. & Loan Assn.* v. *Cleary,* 296 U. S. 315, 336–343. See 12 U. S. C. § 1464 (i) (1958). Cf. *Springfield Inst. for Sav.* v. *Worcester Fed. Sav. & Loan Assn.* 329 Mass. 184, 189.