Fahey, J.
The Plaintiff in this case, Nationwide Mutual Insurance Company (hereinafter “Nationwide”), has filed this cross-motion[1] for summary judgment pursuant to Mass.R.Civ.P. 56(c) on its own declaratory judgment complaint against the defendant Robert A. Bent and intervenor Debra Prokos. Nationwide filed its complaint seeking declaratory relief pursuant to M.G.L.c. 231 A, §§1 and 2, and Mass.R.Civ.P. 57, to establish its rights and liabilities under an insurance policy in the underlying action, Debra Prokos v. Custom Quality Pools, Inc. and Robert A. Bent, Civil Action No. 97-4753.
BACKGROUND
The undisputed material facts incorporated in the record reveal the following. At all times pertinent to this action, the defendant, Robert A. Bent, owned and resided at 16 Wyman Road in Billerica, Massachusetts (hereinafter the “premises”). Bent is an officer, director, and shareholder in two Massachusetts corporations: A&F Bus Company, Inc. (hereinafter “A&F”), and Custom Qualify Pools, Inc. (hereinafter “CQP”). A&F provides transportation on a contractual basis to school systems in the area and it parks its buses on the premises. In 1978, Bent bought half of his parents’ interest in A&F. He served as treasurer of A&F from 1979 until 1996 at which time he became president. Between January 1995 and March 1996 A&F had approximately 30 employees, and kept approximately 28 buses on the premises. CQP designs, constructs, and installs swimming pools throughout Massachusetts.
A two story structure consisting of four apartments is on the premises. Bent resides in one apartment, while the two companies maintain an office in another. The A&F office is across the hall from Bent’s apartment, and there is no connecting door between the two. A&F employees use a half bathroom located off a common hallway in the building, but which is not part of Bent’s apartment. Both companies receive mail at the Bent residence.
Nationwide issued Bent an Elite II Homeowners Policy naming Bent as the insured and the 16 Wyman Road address as the insured premises. The pertinent part of the policy reads as follows:
EXCLUSIONS. 1. Coverage E — Personal Liability, and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:. .. b. arising out of business pursuits of an insured, or the rental or holding for rental of any part of any premises by an insured. Exceptions, if any, are noted on the Declarations. This exclusion does not apply to: (1) activities normally considered non-business . . .
The plaintiff in the underlying action here, Debra Prokos, was employed as a school bus driver for A&F in March of 1996 at the time of the alleged incident. She was on the premises at the time of her accident “pursuant to her employment as a bus driver for A&F ...” See Plaintiff Prokos’ First Amended Complaint at ¶5 and Prokos’ Answers to CQP’s Interrogatories #4. She did not have a relationship with Bent other than employer-employee, and had never been in his apartment until the day of the accident when she was inside his apartment for a drink of water as employees were permitted to do. See Prokos’ Answers to CQP’s Interrogatories #2. Prokos maintains that on March 5, 1996, she was injured after she slipped and fell on the premises due to an unnatural accumulation of snow and/or ice. She has not sued A&F as she was employed by A&F and received workers’ *728 compensation benefits from its carrier. Instead, she has sued CQP and Bent, seeking compensation for the injuries she sustained in the fall.
Bent is being defended in the underlying action by his insurance company, Nationwide. Nationwide contends in this declaratory judgment action that it is not required to provide either a defense or indemnification to Bent as the incident here falls within the “business pursuits” exception to coverage under the policy.
DISCUSSION
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highland Ins. Co. v. Aeorovox, Inc., 424 Mass. 226, 232(1997). When a party does not bear the burden of proof at trial, it is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “Here, there are no material facts in dispute. The only dispute is about the proper interpretation of the relevant insurance polic[y], and therefore raises only a question of law.” Massachusetts Bay Transportation Authority v. Allianz Ins. Co., 413 Mass. 473, 476 (1992).
“As a general rule, the policyholder bears the initial burden of proving coverage within the policy description of covered risks.” Markline Co. v. Travelers Ins. Co., 348 Mass. 139, 140 (1981). “Once basic risk coverage is established, the burden shifts to the insurer to prove the applicability of any exclusion to coverage set forth outside of the insuring clause.” Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 321 (1991). “An insurer has a duty to defend an action against the insured ‘if any allegations in the [underlying] complaint were reasonably susceptible of an interpretation that they stated or adumbrated a claim covered by the . . . policy.’ ” United National Insurance Company v. Parish, 48 Mass.App.Ct. 67, 68-9 (1999) quoting Liquor Liab. Joint Underwriting Assn. of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 319-20 (1995). Here, in determining Nationwide’s duty to the defendant Bent, the court can only look at the complaint and the policy itself. See id. at 69 (citation omitted). Further, when scrutinizing an exclusionary clause, as we must do here, the words must be construed in their “usual and ordinary sense.” Id. at 70 quoting Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). It is important to keep in mind the distinction between liability and coverage. See Grand Union Co. v. General Accident, Fire & Life Assur. Corp., 4 N.Y.S.2d 704, 710 (1938). “So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage.” Id.
The issue here is whether Prokos’ slip and fall on the premises arose out of a business pursuit of Bent. If it did, the exclusion to the policy will apply and Nationwide willnot be required to defend or indemnify the defendant Bent in the underlying action. Accordingly, there are two questions to be answered to reach a conclusion here: 1) were the activities conducted by Bent on the premises “business pursuits?” and if they were, 2) did Prokos’ slip and fall arise out of those activities?
No Massachusetts appellate court has ever considered the question of exactly what types of activities constitute the essence of a “business pursuit.” A trend has evolved, however, amongst different jurisdictions in the country defining a “business pursuit” in a uniform maimer. Applying the tenable principles developed by numerous courts to this case, the only logical conclusion here is that Bent’s operation of the two companies on the premises must be considered a “business pursuit.”
In order to transform the phrase “business pursuit” from a legal idiom into one which can be interpreted in its “usual and ordinary sense,” the words must be looked at individually. “Business, in common usage, ‘signifies an undertaking or calling for gam, profit, advantage or livelihood.’ A pursuit is an activity that one ‘engages in seriously and continually or frequently. . . .’ Thus, the definition of ‘business pursuit’ contains two significant elements: profit motive and continuity.” Haley v. Allstate Insurance Company, 529 A.2d 394, 396 (N.H. 1987) (citations omitted); see also Sun Alliance Insurance Co. of Puerto Rico, Inc. v. Soto, 836 F.2d 834, 836 (3rd Cir. 1988); Industrial Indem. Co. v. Goetti, 674 P.2d 869, 873 (Ariz.App. 1983); Sentry Insurance Company v. Sahlberg, 3 MASS. L. RPTR. No. 21, 471 (May 22, 1995); 48 ALR3d 1096, 1100 (citing instances from seven states in which courts have, expressly or by implication, used the two prong “business pursuit” definition). This definition is a logical way to construe the phrase “business pursuit” in its “usual and ordinary sense.” “[B]ecause the terms of the exclusionary clause are plain and free from ambiguity, we do not . . . construe them strictly against the insurer.” Barnstable County Mutual Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978).
Applying each of these two factors to the facts of this case leads to the inescapable conclusion that Bent’s operation was a “business pursuit.” The activities of the companies, A&F and CQP, are not of the type that would ordinarily take place at one’s home. “Clearly, the manifest design of homeowners’ insurance is to protect homeowners from risks associated with the home and activities related to the home.” Worcester Mutual Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986). Surely the operations of a bus company and a swimming pool company are not consistent with the uses that are ordinarily associated with owning a home. It is reasonable to infer that these businesses were conducted with a motive to earn a profit.
Second, these operations were continuous. There is nothing to suggest that this was a temporary opera *729 tion. In 1978, Bent bought half of his parents’ interest in A&F. He served as treasurer of A&F from 1979 until 1996 at which time he became president. Between January 1995 and March 1996, A&F had approximately 30 employees and kept approximately 28 buses on the premises. Certainly, these facts illustrate the continuous nature of A&F’s business.
Since the first question of the two part query must be answered in the affirmative, that Bent’s activities on the premises were indeed “business pursuits,” we must now turn to the decisive second question, did Ms. Prokos’ slip and fall “arise out of’ those business pursuits? This analysis is not to be confused with the causation analysis done in a negligence case. “The usual meaning ascribed to the phrase ‘arising out of is much broader than ‘caused by'; the former phrase is considered synonymous with ‘originate’ or ‘come into being.’ ” New England Mutual Life Insurance Co. v. Liberty Mutual Insurance Co., 40 Mass.App.Ct. 722, 726 (1996) (citations omitted).
Based on the evidence submitted at oral argument and with the summary judgment papers, Prokos was on the premises for the purpose of driving one of the A&F buses that was parked there. She was not there to pursue any social objectives or for any reason other than her employment. That Prokos had gone into Bent’s apartment to get a drink of water does not automatically establish that her presence did not arise out of a business pursuit. Where the plaintiff Prokos’ complaint and her own Answers to Interrogatories are unequivocal that Prokos was on the premises at the time of her accident pursuant to her employment as a bus driver for A&F, her presence arises out of Bent’s business pursuit. The slip and fall occurred after she had left the apartment to return to her bus and was walking on either a paved or gravel covered area located behind the building. She was not on any type of “frolic” taking her out of the scope of her employment. That she received workers’ compensation benefits from A&F’s carrier is, while certainly not conclusive, some evidence that her presence “arises out of’ her employment, which is Bent’s business. It follows then, that Prokos’ slip and fall “originated” or “came into being” expressly because she was on the premises to do her job, to drive the bus. The accident “arose out of’ her employment for A&F, one of Bent’s business pursuits.
Since both questions must be answered in the affirmative, it can only be said that Prokos’ bodily injury arose out of Bent’s business pursuits. This being the case, the exclusion to the policy applies and Nationwide is not required to defend or indemnify Bent in the underlying action. Cf. Newell-Blais Post #443, Veterans of Foreign Wars of the United States, Inc. v. The Shelby Mutual Ins. Co., 396 Mass. 633, 638 (1986) (holding that the duty to indemnify does not automatically follow from the duty to defend). Nationwide’s cross-motion for summary judgment is therefore allowed.[2]
ORDER
Based upon the foregoing reasons, it is hereby ORDERED that plaintiffs cross-motion for summary judgment is ALLOWED. It is further DECLARED that the incident occurring on the premises is not an activity covered by the Homeowner’s Insurance policy issued to Bent by Nationwide and, therefore, Nationwide is not obliged to defend or indemnify Bent for claims against him for personal injuries resulting therefrom.

 Prokos has filed a motion for summary judgment in this declaratory judgment action seeking an order compelling Nationwide to defend and indemnify Bent in the underlying action.

 For the same reason, Prokos’ motion for summary judgment is denied.