SPRINGFIELD INSTITUTION FOR SAVINGS & others *vs.* WORCESTER FEDERAL SAVINGS AND LOAN ASSOCIATION & another.

Suffolk. May 8, 1952. — July 3, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Federal Savings and Loan Association. Bank and Banking.*

The Federal home owners' loan act, by U. S. C. (1946 ed.) Title 12, § 1464, empowers the home loan bank board to provide for the establishment of branches of savings and loan associations. [187–188]

A Federal savings and loan association organized under the home owners' loan act with its main office in Massachusetts and doing a business similar to that of Massachusetts savings and coöperative banks is not precluded by G. L. (Ter. Ed.) c. 167, § 37A, inserted by St. 1949,

329 Mass. 184                                                    185

Springfield Institution for Savings *v.* Worcester Fed. Savings & Loan Asso.

c. 640, from establishing, with the approval of the home loan bank board pursuant to the Federal act, a branch office in a Massachusetts municipality more than fifteen miles distant from that in which its main office is located, although the Massachusetts banks are not allowed to do so.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 31, 1951.

The suit was reserved and reported without decision by *Wilkins,* J.

*Rutherford E. Smith & Richard Wait,* (*John F. Carr* with them,) for the plaintiffs.

*Henry P. Fielding,* Assistant Attorney General, for the Attorney General, intervener.

*Charles B. Rugg,* (*John I. Robinson, Kleber A. Campbell, Jr., & Donald R. Grant* with him,) for the defendants.

*T. Gregory Sullivan; John P. Clair; Fred N. Oliver, Michael F. McCarthy, & Joseph W. Keena* of New York; and *Holmes Baldridge,* Assistant Attorney General of the United States, *Edward H. Hickey & Donald B. MacGuineas,* Attorneys, Department of Justice, by leave of court, submitted briefs as amici curiae.

WILKINS, J.   Twelve savings banks in various parts of the Commonwealth bring this bill in equity for a declaratory judgment under G. L. (Ter. Ed.) c. 231A.   The defendants are Worcester Federal Savings and Loan Association, which maintains its principal or home office in Worcester, and Union Federal Savings and Loan Association, which maintains its principal or home office in Pittsfield.   The defendants, formerly Massachusetts banking corporations, are now corporations organized and operating under the home owners' loan act for the purposes of acting as local mutual thrift institutions and of financing homes.   U. S. C. (1946 ed.) Title 12, §§ 1461–1468, as amended.   The business of each is similar to that of savings banks and coöperative banks incorporated in this Commonwealth.   See *Commissioner of Corporations & Taxation* v. *Flaherty,* 306 Mass. 461.   On September 29, 1950, each defendant established a branch office in Springfield, which is forty-one miles from Worcester

and thirty-nine miles from Pittsfield. The defendants have
filed an answer containing a counterclaim. The Attorney
General has intervened on the side of the plaintiffs and filed
an information, purportedly pursuant to G. L. (Ter. Ed.)
c. 231A, § 8, inserted by St. 1945, c. 582, § 1. The purpose
of all the pleadings is identical. A binding declaration is
sought whether establishment of these branches in a city
more than fifteen miles distant from the city where the
principal or home office is located is unlawful. The facts
were agreed. The single justice reserved and reported the
case without decision. G. L. (Ter. Ed.) c. 211, § 6.

The establishment of each branch had the written approval
of the Home Loan Bank Board, but was contrary to the
apparent prohibition of G. L. (Ter. Ed.) c. 167, § 37A, in-
serted by St. 1949, c. 640, which reads: "No association,
corporation, partnership, or person organized or operating
under laws other than the laws of this commonwealth and
doing a business similar to any business referred to in sec-
tion one, shall establish or maintain any branch or depot
in this commonwealth unless expressly authorized to oper-
ate and maintain a branch or depot by the laws under
which it was organized or operates and except in accordance
with the same restrictions and limitations as to branches
and depots applicable to similar institutions organized or
operating under the laws of this commonwealth." Sec-
tion 1 contains a definition of "bank," which includes sav-
ings banks and coöperative banks. G. L. (Ter. Ed.) c. 167,
§ 1, as amended by St. 1935, c. 452, § 1. Both in 1950 and
down to the present time savings banks and coöperative
banks incorporated in this Commonwealth have not been
allowed to establish branches in a municipality more than
fifteen miles distant from that in which the main banking
office is located. G. L. (Ter. Ed.) c. 168, § 25, as amended
by St. 1949, c. 270, and St. 1951, c. 100; c. 170, § 12, as
appearing in St. 1950, c. 371, § 1.

The point at issue is whether the limitation on branch
banking imposed by § 37A is applicable to Federal savings
and loan associations doing business in this Commonwealth.

The answer depends upon the effect to be given to the Federal legislation and administrative acts done pursuant to it.

Beyond question, the home loan board has been validly and generally empowered by the home owners' loan act to make rules for the organization and regulation of savings and loan associations. *Fahey* v. *Mallonee,* 332 U. S. 245, 250, 253. "The statute is one of the type which states a policy, provides for the project under consideration, lays down some general rules and prohibitions and leaves details to the Board . . . ." *North Arlington National Bank* v. *Kearny Federal Savings & Loan Association,* 187 Fed. (2d) 564, 565 (C. A. 3). Its purposes stated in its own words are: "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." U. S. C. (1946 ed.) Title 12, § 1464 (a).

While not self authorizing, *Addison* v. *Holly Hill Fruit Products, Inc.* 322 U. S. 607, 616, the regulations of the board explicitly provide for the establishment of branches.[1] Such action, it is argued, is not authorized by the home owners' loan act. The act, to be sure, does not use the word "branch," but it does contain provisions which seem consistent only with the conferring of such a power upon

---

[1] "*Branch office.* No Federal association may establish or maintain a branch office without the prior written approval of the Board. Each application by a Federal association for permission to establish or maintain a branch office shall state the need for such branch office; the functions to be performed; the personnel and office facilities to be provided; the estimated annual volume of business, income, and expenses of such branch office; and shall be accompanied by a proposed annual budget of such association. Any business of a Federal association, except the approval of loans, may be transacted at a branch office, as authorized by its board of directors. A detailed record of all transactions of any branch office of a Federal association shall be maintained at such office and such control records as may be necessary for the proper conduct of such association's business shall be furnished by such branch office to its home office." 24 C. F. R. § 145.14. See id. § 145.13.

the board. Home loan associations may lend funds "on the security of first liens upon homes or combination of homes and business property within fifty miles of their home office." § 1464 (c), as amended. On certain conditions, an association may "convert itself into a savings and loan type of institution organized pursuant to the laws of the State, District, or Territory . . . in which the principal office of such Federal association is located." § 1464 (i), as amended. If branches are not authorized, it would be pointless to refer to the "home office" or the "principal office." See *Media Title & Trust Co.* v. *Cameron,* 289 Pa. 96, 97. A most important consideration, too, is the broad discretion confided in the board in the selection of localities for the establishment of such institutions. "No charter shall be granted . . . unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions." § 1464 (e).[1] When subsection (e) is read in connection with the portions of subsections (c) and (i) quoted above, it appears that the board's discretion in determining the community to be served is to be unaffected by State lines. Moreover, as appears from subsection (a), the board in issuing charters must give "primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." The practice in 1949 with regard to branch offices seems to have been that six States prohibited branches, thirteen authorized them, and twenty-nine had no legislation on the subject. See Report of Committee on Banking and Currency, Sen. Rep. No. 1118, 81st Cong., 1st Session 2, cited in *North Arlington National Bank* v. *Kearny Federal Savings & Loan Association,* 187 Fed. (2d) 564, 565–566. We agree with the conclusion of the Court of Appeals for the Third Circuit in the case last cited that subsection (a) constitutes

---

[1] See § 1464 (g) for another reference to "the community to be served."

an express authorization to the board to consider and determine the establishment of branches to be among "the best practices of local mutual thrift and home-financing institutions." We see no reason to suppose that Congress intended that the board should make regulations which should not be of uniform application throughout the country. See *Hopkins Federal Savings & Loan Association* v. *Cleary,* 296 U. S. 315, 333.

It does not ensue because formerly under the national bank law the power to establish branches was withheld, *First National Bank* v. *Missouri,* 263 U. S. 640, that Congress did likewise in the home owners' loan act. *California* v. *Coast Federal Savings & Loan Association,* 98 Fed. Sup. 311, 319. See *Eddy* v. *Home Federal Savings & Loan Association,* 60 Cal. App. (2d) 42, 44–45.

Once the conclusion is reached that the Home Loan Bank Board has been clothed with Congressional sanction to allow the establishment of branches, the rest of the reasoning follows almost automatically. It then would become inconsistent to assert that there is no conflict between § 37A and the power of the board to approve the establishment of a branch and at the same time to insist that that power is so circumscribed by § 37A as to render nugatory the approval of a branch in a municipality which is not within fifteen miles of the city or town where the principal banking office is located. In our opinion, the conflict already exists, and it is a conflict which is "direct and positive." *Kelly* v. *Washington,* 302 U. S. 1, 10. There is nothing inconsistent with what we here say in *Commonwealth* v. *McHugh,* 326 Mass. 249, 265–266.

If it be thought that the result reached is not in accord with the most approved principles of economics, the remedy must lie with Congress.

A decree is to be entered, with costs to the defendants, declaring that G. L. (Ter. Ed.) c. 167, § 37A, inserted by St. 1949, c. 640, does not render invalid the branches which have been established by the defendants with the approval of the Home Loan Bank Board.

