UNITED STATES of America, ex rel. STATE OF WISCONSIN, Plaintiffs,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, and Federal Home Loan Bank Board, Defendants.

Civ. A. No. 6475.

United States District Court
E. D. Wisconsin.

March 18, 1957.

Stewart Honeck and Roy Tulane, Madison, Wis., for plaintiffs.

Russell & Bridewell, Chicago, Ill., Jack Werner, Milwaukee, Wis., for defendant.

Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for intervening defendant.

TEHAN, Chief Judge.

The Attorney General of the State of Wisconsin has filed in the name of the United States, on the relation of the State of Wisconsin, a petition for leave to file an information in the nature of quo warranto against defendant First Federal Savings and Loan Association in Milwaukee, Wisconsin, requiring said defendant (hereinafter referred to as the Association) to declare by what right it asserts a charter and franchise to establish receiving stations in the County of Milwaukee at a distance from its principal location and in default thereof asking that a judgment of ouster issue vacating and forfeiting the charter asserted by the Association.

Following a hearing at which oral arguments of counsel were heard and written briefs submitted by the parties, this court, being of the opinion that the relator (hereinafter referred to as the State of Wisconsin) had made a showing that a substantial issue existed, ordered that it be granted leave to file its information in the nature of quo warranto. Thereafter, this court granted the motion of the Federal Home Loan Bank Board (hereinafter referred to as the Board) to intervene as a party defendant.

The pleadings and a stipulation establish substantially the following fact situation:

The State of Wisconsin, one of the forty-eight states of the United States of America, is the owner of almost $30,000,000 in loans upon homes of veterans in the State of Wisconsin. Most of these loans are secured by second mortgages which are junior to first mortgages held by chartered savings and loan institutions and other supervised agencies. The security of said second mortgages is dependent upon the maintenance of a sound system of financial institutions in the State of Wisconsin.

In Wisconsin and many other areas of the United States, branch banks and branch agencies of state savings and loan associations are prohibited by law or state practice, and in some cases prohibited unless approved by properly authorized governmental agencies. The soundness of conforming federal law to local practices has been recognized by the Congress itself in regard to national banks by the provisions of the McFadden Act, which reads in part, Title 12 U.S.C.A. § 36(c):

"A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to

State banks by the law of the State in question; [here follow similar provisions]"

In the State of Wisconsin, the prohibition against the operation or maintenance of branch offices or agencies is asserted in Section 215.02(20) Wisconsin Statutes:

"(20) One Office Only. No savings and loan association or building and loan association carrying on business in this state shall operate or maintain any branch offices, paying or receiving stations, agencies or branch associations within this state."

The defendant Association was chartered by the United States of America on February 20, 1934 under the provisions of Section 5 of the Home Owners' Loan Act of 1933 as amended, 12 U.S.C.A. § 1464, and the Rules and Regulations for Federal Savings and Loan Associations adopted by the Board.

By the provisions of the organic act, Section 5 of the Home Owners' Loan Act of 1933 as amended, the Board is required by the Congress of the United States, in the issuance of charters, to give primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States, to refuse to grant a charter without a judgment of the Board itself that a necessity exists for an association in the particular community to be served, and a finding that such association can be established without undue injury to properly conducted existing local thrift and home-financing institutions. 12 U.S.C.A. § 1464(a, e).

The specific provision of the Board's Rules and Regulations relating to the establishment and operations of agencies is Regulation No. 145.15 which reads in material part:

"Sec. 145.15 *Agency.* * * * A Federal association may, without approval by the Board, establish or maintain any agency the functions of which are limited to the servicing of loans and contracts, or to the management or sale of real estate owned, or to any combination of such functions; temporary or incidental agencies may likewise be established for individual transactions or for special, temporary purposes. An original record of all business of a Federal association transacted at any agency thereof shall be kept by such agency and such reports of business so transacted shall be made to a branch office or to the home office of such association as are required for the proper conduct and control of the association's affairs." 24 C.F.R. 1954 Supp. to 1949 Ed. Section 145.15.

The defendant Association in apparent reliance on Regulation 145.15 and admittedly with the exercise of no judgment but its own, established and is operating three agencies in the County of Milwaukee, separate and at a distance from its main office.

It appears from the testimony contained in the depositions taken of two of the Association's employees, which testimony has been stipulated to as accurately describing the agencies' operations, that these agencies collected payments on mortgages, kept loan files and payment records, serviced loans, channeled insurance claims, transferred delinquent accounts to the main office, prepared daily trial balances and monthly reports, and answered purchasers' questions. Loans themselves were not negotiated at these agencies. Loan and savings account applications were referred to the main office and never taken by the agencies. Deposit payments on savings share accounts were received at the main office, not at the agencies.

Prior to the commencement of this action, the Attorney General of Wisconsin made a formal demand upon the Attorney General of the United States that he file an information in the nature of quo warranto against the defendant Association for the purpose of securing a judgment of ouster based on the usurpa-

tions described in the information. The Attorney General of the United States, however, formally declined to file such an information.

Upon the pleadings, proceedings, depositions and the stipulation in this action, the State of Wisconsin moved the court pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., to enter judgment for it for the relief demanded in the information on the grounds that there is no issue as to any material fact in the action and the State of Wisconsin is entitled to judgment as a matter of law.

Prior to this motion, the defendant Association had moved for dismissal of the information on the grounds that this court had no jurisdiction, that the information stated no cause of action, and that the State of Wisconsin could have no standing in this court until administrative remedies had been exhausted. The intervening Board likewise moved for dismissal of the information on the grounds that the court lacks jurisdiction to grant the relief requested; that the State of Wisconsin has no authority to use the name of the United States in maintaining an action in the nature of quo warranto; and that the information fails to state a claim upon which relief can be granted.

Since certain of the motions for dismissal interposed by the defendants involve a consideration of matters beyond the pleadings filed in the case, these motions will be treated as motions for summary judgment under Rule 56, Federal Rules of Civil Procedure.

Before proceeding to a consideration of the questions of law raised by these cross-motions for summary judgment, it should be pointed out that no party in resisting such motion of an adversary party contends that the motion should be denied by reason of the existence of a genuine issue of material fact.

At an earlier stage in this proceeding the State of Wisconsin apparently was not prepared to concede that the agencies involved in this action were operat-

ing as agencies "limited to the servicing of loans and contracts, or to the management or sale of real estate owned, or to any combination of such functions" as described in Section 145.15 of the Board's Regulations. 24 C.F.R. 1954 Supp. to 1949 Ed. Section 145.15.

Accordingly, it caused depositions to be taken of two of the Association's employees in respect of the operations and functions carried on in these agencies. While the State of Wisconsin has still not expressly conceded the fact, its failure to contend that the testimony given or that other evidence shown to be in existence and which could be adduced at a trial would prove otherwise, requires that it be held as established and beyond a question of fact that the services performed at these agencies are within the limitations of Section 145.15 of the Board's Regulations.

The assertion of the right of the State of Wisconsin or any person to bring an action in the nature of quo warranto without the consent of the Attorney General of the United States, raises a substantial question. This court is inclined however, to the opinion that if the defendant Association in asserting the right to maintain agencies is asserting and usurping a prerogative and franchise not conferred upon it by its charter and is invading the sovereign prerogatives of the United States by whom the charter was granted, the sovereign State of Wisconsin has standing to employ the extraordinary writ of quo warranto to test the legality of the Association so to act. We are of the further mind that the State of Wisconsin is not required to seek its remedy by use of the administrative procedure under the Act nor is it required to use less extraordinary remedies before resorting to quo warranto. We assume these procedural points, however, and do not decide them, since our decision does not turn upon them.

The validity or want of validity in the contentions of the respective parties on the merits of these proceedings can, we believe, be best evaluated against a background of the decisional law on

the organic act and the rules and regulations established thereunder.

The Home Owners' Loan Act of 1933 authorizes the Federal Home Loan Bank Board, an unincorporated agency in the executive branch of the United States Government, to issue charters for the creation of Federal savings and loan associations. The standards for the issuance of charters to such associations are set forth in the following sections of the *organic act*:

Section 1464.

"(a) In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.

\* \* \* \* \* \*

"(e) No charter shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions."

The defendant association was chartered on February 20, 1934, under the provisions of the above sections and the rules and regulations for Federal savings and loan associations adopted by the Board.

The power of the Board so to issue such charters has been upheld as constitutional. Fahey v. Mallonee, 1947, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030; First Federal Savings & Loan Ass'n of Wisconsin v. Loomis, 7 Cir., 1938, 97 F.2d 831, 121 A.L.R. 99.

The State of Wisconsin is not here challenging the right of the Board to have issued that charter and the right of the defendant Association to operate under it at least so far as its main office functions are concerned.

Under the organic act, the Board was given certain rule-making power with respect to Federal savings and loan associations. 12 U.S.C.A. § 1464(d). The resulting rules and regulations make provision among other things for the establishment and maintenance of both branches and agencies. Section 145.14 and Section 145.15 of the Federal Savings & Loan System [Revised].

Because the ultimate questions we here deal with involve the validity of those provisions that provide for the creation of branches and agencies, it would appear to be in order that we treat at some length the decision of the United States Court of Appeals for the Third Circuit, which in the case of North Arlington Nat. Bank v. Kearny Federal Savings & Loan Ass'n, 3 Cir., 1951, 187 F.2d 564, certiorari denied 1951, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617, sustained the power of the Board to establish branches. In that case, the plaintiff was a national bank doing a general banking business in North Arlington, New Jersey. The defendant, whose home office was in Kearny, New Jersey, a town adjoining North Arlington, had established and was operating a branch office in North Arlington. The branch office was about a half mile from the home office of the defendant, and was established with the approval of the Federal Home Loan Bank Board. The plaintiff national bank complained of this operation, and asked that it be declared illegal. The plaintiff there placed much reliance on the fact that the statute does not give explicit authority to the Board to permit associations to establish and maintain branch offices. Upon an appeal from judgment of dismissal by the District Court, the Court of Appeals

passed over the procedural points and addressed itself to the merits of the case.

In concluding that the authority to establish branch offices is vested in the Board by the very terms of the congressional enactment, the Court of Appeals used the following language, 187 F.2d at page 565:

"The basic statute is the Home Owners' Loan Act of 1933, 12 U.S.C.A. §§ 1461–1468. Provision for Federal savings and loan associations begins with Section 1464. The statute is one of the type which states a policy, provides for the project under consideration, lays down some general rules and prohibitions and leaves details to the Board which is authorized by Section 1463. The statutory delegation of authority to the Board has been held constitutional."

Because explicit authority to the Board to permit branch offices cannot be found in the statute, the court dealt with the words and phrases in the statute on which each side respectively relied to show that such authority was intended, or contra, not intended to be given. Upon analysis, the court "granted that a microscopic examination of the statutory words alone does not bring one to any conclusion not open to reasonable differences of opinion." The court, however, found "strong argument for the existence of the power on the part of the Board" from other words of the statute, 187 F.2d at page 565:

"Strong argument for the existence of the power on the part of the Board to establish a branch office for an association we think comes from other words of the statute. The Board is authorized in Section 1464(a) to issue charters for Federal savings and loan associations 'giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.' Here is an area where the Board is given the duty and authority to make policy. It is supposed to find out what the practices of these institutions are and give primary consideration to the best ones.

"What is the practice with regard to branch offices? According to a committee report on a bill to amend the present act, only six states have statutes which prohibit the establishment of branch offices by building and loan associations. Thirteen states specifically authorize them and twenty-nine have not legislated upon the subject. Congress put the duty upon the Board to decide what was the best practice and to give consideration to it. The Board did so by authorizing branches under conditions set out in its Regulations. This, it seems to us, is a very strong argument for concluding that the authority to establish branch offices is vested in the Board, and by the very terms of the Congressional enactment."

In further support of its holding that the Board had power to create branches, the court relied upon the principle that a contemporaneous interpretation by the authorized administrative agency is of weight in determining what the powers are. In dealing with this point, the court referred to the fact that the provision for the granting of permission for the operation of branch offices has been included in the Rules and Regulations since 1934, and that as of August 19, 1949, there were 1498 Federal savings and loan associations, 59 of which were then operating 73 branches in 22 states and the District of Columbia. The court further emphasized that the weight to be given to this agency's interpretation of authority is emphasized by the subsequent legislative history, all of which impliedly adverted to the existence of the power.

In addition, the Court of Appeals in the North Arlington case was pressed with the decisions under the National Banking Act to the effect that national banks could not under the original law have branches, and that the privilege given to them to establish branches has been very strictly limited. The court

after pointing out the substantial difference between the purpose and function of national banks and savings and loan associations rejected the analogy drawn to the limitations of the powers of the national banks as not very helpful.

In the following year of 1952, the power of the Board to provide for the creation of branches of an association was upheld in Springfield Institution for Savings v. Worcester Federal Savings & Loan Ass'n, 1952, 329 Mass. 184, 107 N. E.2d 315, certiorari denied 1952, 344 U. S. 884, 73 S.Ct. 184, 97 L.Ed. 684, and again in 1955 in First National Bank of McKeesport v. First Federal Savings & Loan Ass'n of Homestead, 1955, 96 U.S. App.D.C. 194, 225 F.2d 33. These three cases constitute the decisional law on this point. All three are appellate court decisions in two of which certiorari was sought and denied.

In this setting of the case law, the position of the defendants on the merits can be simply put: (1) The power of the Board as expressed in Section 145.14 to provide for the establishment and maintenance of branches has been sustained in every appellate test; (2) The allowable operations and functions of an agency [1] set up under Section 145.15 are substantially less than those exercisable by a branch; (3) A fortiori, the power of the Board to provide by Section 145.15 for the establishment and maintenance of agencies must be upheld.

The State of Wisconsin, on the other hand, appears to have substantially shifted its position in the latter stages of the case from the approach originally reflected in its first brief. In the last proceeding in this case before the court, in the rebuttal argument on the oral hearing on the motions, the State of Wisconsin, through one of its Assistant Attorneys General, conceded that the State was "trying to overrule" the North Arlington, Springfield and McKeesport cases.[2] This position is in sharp contrast to the approach taken in the first brief, namely, that previous cases involving the power of the Home Loan Bank Board to approve branch offices upon specific application have no relation to the instant case.[3]

Although these inconsistent approaches to the applicability of the decisional law in this case are not brought in the alternative, we do not think the State of Wisconsin can be heard to complain if we so treat them. As we understand it, the position of the State of Wisconsin then is: (1) The North Arlington, Springfield and McKeesport cases were not correctly decided and should not be followed by this court; (2) That in the event this court refuses to depart from these precedents for the Board to establish branches under the procedures set forth in Section 145.14, nevertheless this court must find that these precedents are inapplicable and distinguishable in

1. The word "agency" for the purposes of this opinion, shall be understood to mean those types of operation referred to in the latter part of Section 145.15 "which are limited to the servicing of loans and contracts, or to the management or sale of real estate owned, or to any combination of such functions". It is necessary to make this distinction since there appears to be a less limited type of agency referred to in the fore-part of Section 145.15, for which it is needful to obtain the Board's prior approval.

2. "We do concede we are trying to overrule the 3 cases that counsel have referred to and cited in their briefs. We don't think the arguments we have made have been considered and we are addressing them to this court and in the only proceeding that we think we can stay in

court on." Oral statement made on rebuttal on oral argument by Roy G. Tulane, Assistant Attorney General of the State of Wisconsin.

3. "Moreover, we point out that previous cases involving the power of the Home Loan Bank Board to approve branch offices upon specific application have no relation to the present case. In regard to the receiving agencies which are now challenged, the Home Loan Bank Board by its regulations attempted to sub-delegate its claimed power to authorize such agencies to the federally chartered association itself, and to allow the association to determine whether or not it wanted such agencies, and how many of such agencies it wanted." Brief of Relator filed December 13, 1954, Page 11.

determining under Section 145.15 whether this Board has the power to "sub-delegate" to officers of various associations the discretion as to whether or not such associations will establish agencies.

In attacking the correctness of the legal conclusions reached in the North Arlington, Springfield and McKeesport cases, the State of Wisconsin has suggested that it is here advancing arguments not considered by those courts.[4] We must confess to a sense of mystification at this claim. A careful reading and re-reading of the briefs filed by the State of Wisconsin and the report of the oral argument have failed to disclose therein any contention or fact that was not advanced and considered in those cases.

▆▆▆ The only two grounds that we have discovered as a reason for disapproval of the above holdings are: (1) There is no explicit language in the statutes giving the Board power to establish branches and agencies; and (2) The policy reflected in the National Banking Act requiring conformity to state and local policy on the matter of branches and agencies is applicable to the Home Owners' Loan Act and institutions chartered thereunder.

In respect to the State's first subpoint, no extended treatment seems necessary. The defendants at no time have ever claimed that there is explicit language in the statute giving the Board power to establish branches and agencies. What the defendants do claim and rely on is the construction and holding of the North Arlington case "that the authority to establish branch offices is vested in the Board, and by the very terms of the Congressional enactment." [187 F.2d 566.]

The plaintiff has failed to point out any reason or fact why this is not a correct construction of the statute. Perforce we hold to the interpretation made by that appellate court.

Despite the fact that the State of Wisconsin has obviously devoted a great deal more of its efforts to the argument that the policy and decisional law attending the National Banking Act is here applicable, we find nothing that is new and was not considered and disposed of in the North Arlington case in the following language, 187 F.2d at page 567:

"Finally, there is a consideration of a point on principle which may not be amiss in this highly technical business of statutory interpretation. We were pressed with the decisions under the National Banking Act to the effect that national banks could not under the original law have branches and that the privilege given to them to establish branches has been very strictly limited. All that is tied up with the historical reasons back of the establishment of national banks and the altogether different type of administrative control exerted over them. We do not think that the analogy drawn to the limitations of the powers of the national banks is very helpful in our questions here.

"These savings and loan associations do some of the same things which banks do, obviously. But they do not do a general banking business. They are set up under the declared Congressional purpose to provide thrift institutions in which people may invest their funds and to provide for the financing of homes. There is no danger of any single association becoming a giant monopoly. Its investment area is limited. The associations themselves can only be set up when, in the judgment of the Board, those applying for the charter are persons of good character and responsibility and there is a need for the institution in the community and a probability of its success. The Board is likewise limited in the granting of the charter to situations where the new association can be established without undue injury to properly conducted local thrift institutions already there.

4. See Footnote 2.

Business with this type of institution is done, so far as payments to it are concerned, in small amounts and at frequent intervals. A man gets one loan on his home. That has to be passed upon by the directors at a meeting in the main office no doubt. But the payments on his loan or his subscription to shares will be a matter where convenience in the location of the association's office is of some concern to the customer. It may well be that it is good practice, instead of chartering a large number of associations too small to carry on successfully, to let an established concern do business through branches for the convenience of its customers. If, under all the restrictions placed upon the Board by the statute, it seems to those charged with the decision that a branch office of an established association should be permitted, we think it would be unfortunate to construe the statute to prevent that exercise of business judgment. Such a construction would tend to defeat the policy declared in the legislation."

Since the National Banking Act is wedded to the policy of conformity to state usages and laws, what the State Judicial Court of the State of Massachusetts stated in the case of Springfield Institution for Savings v. Worcester Federal Savings & Loan Ass'n, 1952, 329 Mass. 184, 107 N.E.2d 315, at page 318, is significant:

"We see no reason to suppose that Congress intended that the board should make regulations which should not be of uniform application throughout the country. See Hopkins Federal Savings & Loan Association v. Cleary, 296 U.S. 315, 333, 56 S.Ct. 235, 80 L.Ed. 251.

"It does not ensue because formerly under the national bank law the power to establish branches was withheld, First National Bank in St. Louis v. State of Missouri at inf. Barrett, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486, that Congress did likewise in the home owners' loan act. [People of State of] California v. Coast Federal Savings & Loan Association, D.C., 98 F.Supp. 311, 319. See Eddy v. Home Federal Savings & Loan Association, 60 Cal.App.2d 42, 44–45, 140 P.2d 156."

The foregoing authority is more than sufficient to reject the contention of the State of Wisconsin in this respect. Nevertheless it should be observed that efforts apparently substantial and determined have been made in the Congress of the United States to impress upon the Home Owners' Loan Act the policy of the McFadden Banking Act of conformity to the state law and practice with respect to financial institutions.

If the Board's policy with respect to branches and agencies was not agreeable to the intent of Congress it had had the opportunity to change it in 1949, 1954 and 1955.[5] It appears to this court

---

5. In 1949, as indicated in the North Arlington opinion, bills in the 81st Congress (H.R. 4710 and S. 2006) were introduced providing for limitations upon the power of the Board with respect to the establishment of branch offices. These bills did not become law. See Sen.Rep. No. 1118, 81st Cong. 1st Sess. (1949).

In 1953, Bill S 975, was introduced in the Senate and succeeded in being passed by the Senate in the following year. 100 Cong.Rec. 6895–6911. This proposed law limited association branches to states where branches were allowed to state savings and loan associations and mutual savings banks by the particular state law or custom. Rep. of Comm. on Banking and Currency, Sen.Rep. No. 1186, 83rd Cong. 2nd Sess. 1 (1954). However, this bill was never reported out of the House Committee on Banking and Currency.

In 1955, companion Senate and House bills, S 972 and H.R. 5364, were introduced in the 84th Congress, 1st Session. They were identical to S 975 of the 83rd Congress, Rep. of Comm. on Banking and Currency, Sen.Rep. No. 518, 84th Cong. 1st Sess. 1 (1955). Although the Senate passed S 972 on June 23, 1955, the House failed to pass the companion bill.

that the fact that the Congress has on each such occasion failed to pass measures calculated to bring conformity to state law and usages is entitled to some weight.

It must be abundantly clear that this court must decline the plea of the State of Wisconsin that it depart from the holdings of the cases of North Arlington National Bank v. Kearny Federal Savings & Loan Association, 3 Cir., 1951, 187 F.2d 564, certiorari denied 1951, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617, Springfield Institution for Savings v. Worcester Federal Savings & Loan Ass'n, 1952, 329 Mass. 184, 107 N.E.2d 315, certiorari denied 1952, 344 U.S. 884, 73 S.Ct. 184, 97 L.Ed. 684 and First National Bank of McKeesport v. First Federal Savings & Loan Ass'n of Homestead, 1955, 96 U.S.App.D.C. 194, 225 F.2d 33.

■ The power of the Board to establish branches pursuant to Section 145.14 having now been determined, there remains only the question whether that Board likewise has the power to provide for the establishment of limited agencies pursuant to Section 145.15. Analysis of these two sections would appear to be the first order:

"Section 145.14. *Branch office.* No Federal association may establish or maintain a branch office without the prior written approval of the Board. Each application by a Federal association for permission to establish or maintain a branch office shall state the need for such branch office; the functions to be performed; the personnel and office facilities to be provided; the estimated annual volume of business, income, and expenses of such branch office; and shall be accompanied by a proposed annual budget of such association. Any business of a Federal association, except the approval of loans, may be transacted at a branch office, as authorized by its board of directors. A detailed record of all transactions of any branch office of a Federal association shall be main-

tained at such office and such control records as may be necessary for the proper conduct of such association's business shall be furnished by such branch office to its home office."

"Section 145.15 *Agency.* * * * A Federal association may, without approval by the Board, establish or maintain any agency the functions of which are limited to the servicing of loans and contracts, or to the management or sale of real estate owned, or to any combination of such functions; temporary or incidental agencies may likewise be established for individual transactions or for special, temporary purposes. An original record of all business of a Federal association transacted at any agency thereof shall be kept by such agency and such reports of business so transacted shall be made to a branch office or to the home office of such association as are required for the proper conduct and control of the association's affairs."

From a reading of the above sections, there are but two differences that appear material:

1. Function. The allowable functions and operations of a branch are very substantially broader than those permitted in a limited agency. The approach used in defining the permissible activities of each is revelatory of their broad differences. In describing the vastly greater operations of a branch, the Board specified only the one function that could not be performed by the branch, that is, the approval of loans; all business otherwise being transactable. On the other hand, in defining the functions of a limited agency, the Board precisely spelled out what such agency could do and thereby excluded all other types of operation.

2. Procedure. Procedurally, it appears that no branch office may be established or maintained by an association without the prior written approval of the Board, whereas a limited agency or agencies may be established without prior leave or approval of the Board and solely at the

discretion of the officers of the association. Stated another way, it appears that a certificate of approval is issued by the Board only after study has been made of the need for such branch, the functions to be performed, the personnel and office facilities to be provided, the estimated annual volume of business and the proposed annual budget. In addition to the criteria set forth in the rule, it appears that in recent years the Board also applies the same tests set out in Section 5(e) of the Home Owners' Loan Act of 1933 that is applied to the application for the original charter. Reports of Committee on Banking and Currency, Sen.Rep. 1186, 83rd Congress, 2nd Session 2 (1954); Sen.Rep. 518, 84th Congress, 1st Session 2 (1955). These tests and the deliberations and judgment consequent thereto are of course in sharp contrast to the complete void of activity or participation by the Board in the establishment of limited agencies.

It seems clear to this court that the same reasoning and authority that established the power of the Board to create branches applies a fortiori with equal force and cogency to the Board's power in respect to the creation of agencies of limited function, provided that in so doing, it exercises this power itself, and in so doing, applies the standards expressed or implicit in the statute and the Rules and Regulations thereunder. Indeed, it would be a most curious result to find power on the major plane and deny it on the minor.

 Our question therefore narrows down to this: Has an agency of a limited character such as we have in the instant case been legally established where the association itself has applied the tests of need, personnel, location and the like, and the Board itself has failed to take any part in the decision?

Before deciding whether failure of the Board to so act constitutes abdication of duty or sub-delegation of powers, it is necessary to determine what, if anything, is being abdicated or delegated.

The establishment of limited function agencies like the ones involved in the instant case was recognized as far back as 1943. Although Section 145.15 did not become effective in its present form until August 15, 1949, as a part of a general revision of the Rules of the Federal Savings and Loan System (see 14 F.R. 3980, 3991 (1949) ), a rule numbered Section 143.16(c), entitled like the present Section 145.15 "Agency", was in effect. In this old 143.16(c) there was a provision which eliminated the requirement of the Board administration to give prior approval to agencies servicing mortgage loans and real estate. Before January 1, 1949, this rule was numbered 203.16(c). See 13 F.R. 8273 (1948). During the time when it was numbered in this way, and to be precise on April 27, 1943, an amendment was filed eliminating the requirement of Board administration approval of agencies servicing mortgage loans and real estate. Bulletin 19, 8 F.R. 5579 (1943). In this bulletin it is flatly stated:

"This amendment is deemed to be of a minor and procedural character within the provisions of paragraph (c) of Section 201.2 of the rules and regulations for the Federal Savings and Loan System."

It thus appears from the above history of the development of the Regulation pertaining to limited agencies that the Board has since 1943 treated this limited phase of savings and loan operations as *de minimis*.

An administrative body cannot by its interpretation of the statute under which it operates increase its power beyond that given by the legislative body, but a contemporaneous interpretation by the authorized administrative agency is of weight in determining what the powers are. Since 1943, there has been included in the Rules and Regulations for the Federal Savings and Loan System a provision for the granting of permission for the operation of a limited function agency without prior approval of the Board.

The State of Wisconsin has nowhere demonstrated or claimed that these restricted operations of a limited function

agency are other than of a *de minimis* character. It has at no time adduced proof that undue injury or any injury whatsoever has resulted to properly conducted existing local thrift and home-financing institutions, nor has it made any showing that the establishment of such limited function agency with or without the prior approval of the Board is not consonant "with the best practices of local mutual thrift and home-financing institutions in the United States."

The State of Wisconsin has failed to acquit itself of its burden of proof in these respects, if proof there be. We are constrained to agree with and follow the interpretation of the administrative board that these limited operations are of such minor and procedural character that they do not require formal and deliberate Board action such as is provided for in respect to other phases of savings and loan association activities.

The fears of the State of Wisconsin that a Federal savings and loan association or associations would be able to blanket an entire county are in our opinion without warrant. The comprehensive supervisory powers given to the Board by the Act and Rules and Regulations, if not the sheer economics of the situation, seem to us to be an effective control against abuses or excesses.

It is the opinion of this court that the Board has the authority to establish limited function agencies and to do so in the manner provided in Section 145.15.

We further conclude that First Federal Savings and Loan Association in establishing the three limited function agencies did not assert and usurp a prerogative and franchise not conferred upon it by its charter and did not invade the sovereign prerogatives of the United States by whom the charter was granted. We find that in fact it did establish such agencies rightfully and legally and in pursuance of a valid Regulation, Section 145.15.

The motion of the defendant, First Federal Savings and Loan Association, and the intervening defendant, Federal Home Loan Bank Board, for judgment of dismissal of the action as to each of them is hereby granted.

For the reasons set forth in this opinion which shall stand as and for findings of fact and conclusions of law in this case, the motion of the plaintiff's relator, State of Wisconsin, for summary judgment is hereby denied.