Carol S. GREENWALD, Commissioner of Banks, Plaintiff,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BOSTON et al., Defendants.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BOSTON et al., Plaintiffs,

v.

Carol S. GREENWALD, Commissioner of Banks of the Commonwealth of Massachusetts, and First Home Loan Bank Board, Defendants.

Civ. A. Nos. 76–3931–C and 77–76–C.

United States District Court, D. Massachusetts.

Feb. 22, 1978.

Terence P. O'Malley, Asst. Atty. Gen., Boston, Mass., for plaintiff.

Carlton W. Spencer, James R. Brown, Jr., Boston, Mass., for Spencer & Stone, Boston, Mass.

William F. McKenna, Los Angeles, Cal., for First Federal Sav. and Loan Assoc.

Harold B. Shore, Associate Gen. Counsel, Roland Marcotte, Jr. Atty., Washington, D. C., for Federal Home Loan Bank Bd.

## MEMORANDUM

CAFFREY, Chief Judge.

These consolidated civil actions challenge the applicability to Federal savings and loan associations of a Massachusetts law requiring interest payments on certain real estate tax deposits.[1] In No. 76–3931–C, Massachusetts Commissioner of Banks Carol S. Greenwald (Commissioner), seeks declaratory and injunctive relief, specifically an order of the Court mandating defendants' compliance with the above-mentioned Massachusetts statute. Defendants in that action include the First Federal Savings and Loan Association of Boston (First Federal) and every other federal savings and loan association with its principal place of business in the Commonwealth.

No. 76–3931–C was originally filed in the Massachusetts Supreme Judicial Court. Pursuant to 28 U.S.C.A. § 1441(b), First Federal removed the matter to this Court, invoking federal question jurisdiction under 28 U.S.C.A. §§ 1331 and 1337. First Federal counterclaimed against the Commissioner and the Federal Home Loan Bank Board (Board) on the ground that any Massachusetts law requiring interest payments by federally-chartered savings and loan associations is unconstitutional. In 77–76–C, commenced in this Court, First Federal and all other federally-chartered savings and loan associations doing business in Massachusetts seek a declaration that ch. 183, § 61 does not apply to federal savings and

loan associations because such associations are subject only to federal regulation. Both the Board and the Commissioner are named as defendants.

These cases are currently before the Court on the parties' cross-motions for summary judgment under Fed.R.Civ.P. 56. All parties concede there is no genuine issue of material fact. On the basis of the pleadings, a hearing on the cross-motions as well as the memoranda submitted by the parties, I rule as follows:

The basic issue raised by these cases is whether ch. 183, § 61 violates the Supremacy Clause, U.S.Const. Art. VI, cl. 2, when applied to federal savings and loan associations. First Federal contends that the Massachusetts statute is preempted by 12 C.F.R. § 545.6–11, a Board regulation. The Commissioner, on the other hand, argues that § 61 is a valid exercise of state authority in light of the Real Estate Settlement Procedures Act of 1974, *as amended*, 12 U.S.C.A. § 2601 et seq. (West Supp.1977) (RESPA).

It is familiar learning that a statute statute contravenes the Supremacy Clause when it obstructs "the accomplishment and the execution of the full purposes and objectives of an Act of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Under traditional doctrine, the state statute is invalid either (1) if it appears that Congress either expressly or impliedly intended federal law to preempt the area, or (2) if the state statute conflicts irreconcilably with federal law. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

---

1. Mass.Gen.Laws.Ann. ch. 183, § 61 (West 1977) provides:

A mortgagee doing business in the commonwealth and holding a first mortgage or lien on a dwelling house of four or fewer separate households occupied or to be occupied in whole or in part by the mortgagor who requires advance payments, deposits or other security by said mortgagor for the payment of real estate taxes on mortgaged property, shall pay interest to said mortgagor on any amounts so paid or deposited in advance. Interest shall be paid at least once a year at a rate and in a manner to be determined by the mortgagee.

Mortgagees required to pay such interest shall file annually with the commissioner of banks a statement showing the amount of net profit or loss from the investment of said deposits. Mortgagees showing a net loss from these investments may file with said commissioner a request for an exemption from the requirement that interest be paid to mortgagors. The commissioner shall maintain as a public record an annual report of interest rates paid to mortgagors as required by this section during the preceding annual period. The report shall list the mortgagees granted exemptions under this section during the preceding annual period.

In urging the Court to find preemption on an implied intent theory, First Federal contends that state laws governing mortgage lending have never applied to federal savings and loan associations, but rather such associations have traditionally been governed solely by federal law. A review of the history of the federal savings and loan system demonstrates the factuality and validity of this argument. The Federal Savings and Loan system was created by Congress to provide, *inter alia,* uniform national home financing. The program began in 1932 with passage of the Federal Home Loan Bank Act, 12 U.S.C.A. §§ 1421–1449. Under that Act, the Board was created and directed to charter 12 regional federal home loan banks to serve as reservoirs of credit for member financial institutions and to make home mortgage loans directly to the public. The following year, Congress enacted the Home Owners' Loan Act (HOLA), 12 U.S.C.A. §§ 1461–1468, which withdrew from the Federal Home Loan Banks the power to make direct loans to the public and authorized creation of federally-chartered savings and loan associations.

Under power delegated by Congress through § 5(a) of HOLA, the Board was authorized to "provide for the organization, incorporation, examination, operation and regulation" of federal savings & loan associations. 12 U.S.C.A. § 1464(a). Pursuant to its statutory mandate, the Board has promulgated comprehensive regulations governing "the powers and operations of every federal savings and loan association 'from its cradle to its corporate grave'." *Kupiec v. Republic Federal Savings & Loan Ass'n,* 512 F.2d 147, 150 (7th Cir. 1975), citing *Meyers v. Beverly Hills Federal Savings & Loan Ass'n,* 499 F.2d 1145, 1147 (9th Cir. 1974).

Pursuant to its statutory authority, the Board on May 14, 1975, effective June 16, 1975, issued the previously-mentioned regulation governing interest payment on escrow accounts by all federal savings and loan associations, 12 C.F.R. § 545.6–11. In pertinent part, the regulation provides:

(c) *Payment of interest on escrow accounts.* A Federal ·association which makes a loan on or after June 16, 1975 on the security of a single-family dwelling occupied or to be occupied by the borrower (except such a loan for which a bona fide commitment was made before that date) shall pay interest on any escrow account maintained in connection with such a loan (1) if there is in effect a specific statutory provision or provisions of the State in which such dwelling is located by or under which State-chartered savings & loan associations, mutual savings banks and similar institutions are generally required to pay interest on such escrow accounts, and (2) at not less thàn the rate required to be paid by such State-chartered institutions but not to exceed the rate being paid by the Federal association on its regular accounts. . . *Except as provided by contract, a Federal association shall have no obligation to pay interest on escrow accounts apart from the duties imposed by this paragraph.* [Emphasis added]

Essentially, the regulation requires a Federal association to pay interest on any escrow account maintained after June 16, 1975, if the state where such dwelling is located has a specific statutory provision under which state-chartered savings and loan associations, mutual savings banks and similar thrift institutions are required to pay such interest.

The above-quoted Board regulation has the force and effect of a statute. *Milberg v. Lawrence Cedarhurst Federal Savings and Loan Ass'n,* 496 F.2d 523 (2d Cir. 1974); *Community Federal Savings and Loan Ass'n v. Fields,* 128 F.2d 705 (8th Cir. 1942). Every Federal Court which has addressed preemption questions involving HOLA has held that Congress impliedly intended that federal law should govern the regulation of federal savings and loan associations. *See, e. g., Rettig v. Arlington Heights Federal Savings and Loan Ass'n,* 405 F.Supp. 819 (N.D.Ill.1975). Such holdings establish the impropriety of any state regulation in the area. *Meyers v. Beverly Hills Savings & Loan Ass'n,* 499 F.2d 1145

(9th Cir. 1974); *Murphy v. Colonial Federal Savings & Loan Ass'n*, 388 F.2d 609 (2d Cir. 1967). Consequently, I rule that federal law and federal regulations issued thereunder preempt the field of interest payments by federally-chartered savings and loan associations.

Moreover, in litigation involving the same regulation at issue here, albeit another of its provisions, the Supreme Court of Wisconsin held that 12 C.F.R. § 545.6–11 preempted state law, stating "it is apparent that Congress has substantially occupied the field in regard to the regulation of federal savings and loan associations, particularly in the area of the regulation of lending practices. This scheme of federal regulations is pervasive." *Kaski v. First Federal Savings & Loan Ass'n of Madison*, 72 Wis.2d 132, 240 N.W.2d 367, 372 (1976).

It should be noted that exclusive Federal authority over federal savings and loan associations has been recognized legislatively by Massachusetts. Gen.Laws ch. 168, § 73B provides in pertinent part:

> . . . Upon the grant to any association of a charter by the federal home loan bank board, the savings bank receiving such charter shall cease to be a savings bank incorporated under this chapter and shall no longer be subject to the supervision and control of the commissioner.

The Supreme Judicial Court has also ruled that local officials cannot control federal banking practices. *Springfield Institution for Savings v. Worcester Federal Savings & Loan Ass'n*, 329 Mass. 184, 107 N.E.2d 315 (1952), *cert. denied*, 344 U.S. 844, 73 S.Ct. 184, 97 L.Ed. 684.

Not only do I rule that preemption occurs under the congressional intent test enunciated in *Florida Lime and Avocado Grovers Inc. v. Paul, supra*, but also I find contravention of the Supremacy Clause because the Massachusetts statute conflicts directly with federal law in that the federal regulation applies only to loans made after June 16, 1975, while the state law requires interest payments on tax assessments based on outstanding loans made prior to that date. Another conflict lies in the fact that the federal regulation applies only to loans made on the security of single-family dwellings, whereas the Massachusetts statute requires interest payments on loans secured by other types of dwellings. Further conflict consists of the fact that the federal regulation limits the maximum rate of interest which a federal association must pay on its escrow accounts to the rate paid on its regular savings accounts, while under state law a higher interest rate could be required. Because of these direct conflicts between the federal regulation and the State statute, I rule that the federal regulation prevails insofar as federal savings and loan association mortgage-lending practices are concerned.

Having decided that federal regulation in this area preempts state law, the next question before the Court is whether Congress in enacting the RESPA intended to carve out an exception to its grant of plenary regulatory authority to the Board. The Commissioner contends that Section 18 of the RESPA permits the operation of State law. The Commissioner relies exclusively on the following provision, entitled "*State laws unaffected; inconsistent Federal and State provisions*" which provides:

> This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Secretary is authorized to determine whether such inconsistencies exist. The Secretary may not determine that any State law is inconsistent with any provision of this chapter if the Secretary determines that such law gives greater protection to the consumer. In making these determinations the Secretary shall consult with the appropriate Federal agencies. 12 U.S.C.A. § 2616.

I rule that § 2616 of the RESPA is inapplicable to the case at bar. The clear language of § 2616 indicates that compliance with State law is permitted only when

(1) the Secretary of Housing and Urban Development determines that such state law gives greater protection to a consumer than does federal law, and (2) the relevant State law covers "settlement practices." In this case there has been no Federal agency determination that Massachusetts law gives greater consumer protection than 12 C.F.R. § 545.6–11(c). Moreover, the payment of interest on escrow accounts is not a settlement practice. 12 U.S.C.A. § 2602 defines the term "settlement services" as

> including, but not limited to the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, · services rendered by a real estate agent or broker, and the handling of the processing, and closing or settlement.

I rule that interest payment on tax escrow accounts, which can continue long after the closing of the mortgage transaction and which can continue to occur during the entire life of the mortgage, is obviously not a settlement practice within the meaning of the statute. Therefore the Commissioner's position is not sustained.

Order accordingly.